BLOODGOOD Executor *against* HERMAN BRUEN, Executor of SMITH.

In order to avoid the operation of the statute of limitations by a new promise, it should be averred in pleading that it was made within the time limited by the statute. A general allegation that the debt had been repeatedly acknowledged is not enough.

An acknowledgment, in order to raise the presumption of a promise to pay a debt barred by the statute, must be unconditional and, such a one as implied a willingness to pay it. It must also be made to the holder or some one acting for him, and not to a stranger.

An acknowledgment of the indebtedness is not of itself a promise, to avoid the statute, but under certain circumstances evidence from which a promise may be inferred. But when made in an answer to a bill in chancery filed by a third person, or drawn out from the debtor when testifying as a witness, no promise can be implied from it.

One who is the surviving partner and also the executor of his deceased partner, can not in either relation by a new promise revive against the deceased partner's estate a debt of the copartnership.

The doctrine in *Mount Stephen* v. *Brooke*, (3 *B. and Ald.* 141,) *and Clark* v. *Hougham*, (2 *Barn. and Cress.* 149,) doubted; and that in *Bell* v. *Morrison*, (1 *Pet.* 351,) approved.

The equitable right to an action against the estate of a deceased partner of a firm, where the surviving partner is solvent at his death and then becomes insolvent, arises at the time the survivor becomes insolvent, and is barred in ten years therefrom.

This was an appeal from a decree of the superior court of the city of New York.

On the 28th day of June, 1828, Thomas H. Smith and George W. Bruen were partners in business in the city of New York. under the style of Thomas H. Smith & Son. Upon that day the firm became indebted to Thomas Bloodgood, the plaintiff's testator, in the sum of $10,360·11 upon a promissory note, payable in ninety days from date. Thomas H. Smith died in September, 1828, leaving a large estate consisting of real and personal property, which he

Bloodgood *against* Bruen.

disposed of by will. In this will the first provision was as follows:

" Item — I direct all of my just debts to be paid, &c."

He then disposed of his real and personal estate by various devises and bequests, and authorized his executors to sell and convey his real estate whenever they should think it expedient, and appointed several persons, among whom was his partner, George W. Bruen, his executors. The latter alone became qualified to act as executor, and received letters testamentary, and assumed the duties of executor.

After the passage of the bankrupt act of 1841, George W. Bruen availed himself of its provisions, and was discharged from his debts under it.

On the first of July, 1845, the plaintiff, as executor of Thomas Bloodgood who had died, filed his bill of complaint in the action before the vice chancellor of the first circuit, against George W. Bruen, and the devisees of Thomas H. Smith, alleging the facts above stated, and that the indebtedness upon the note still existed: that George W. Bruen was the sole surviving partner of Thomas H. Smith, and had the books and accounts of the firm of Thomas H. Smith & Son, and that he had as executor received a large amount of property for which he had never accounted, and had then assets of the estate more than sufficient to pay the debt: that he had on repeated occasions and to divers persons since the date of the note, admitted that the amount thereof with interest thereupon remained due and unpaid, and promised to pay the same, and that in a certain answer by him made to a bill in chancery, wherein James Iddings was complainant and he and others were defendants, which answer was sworn to on the 18th day of June, 1842, the said George W. Bruen did allege and insist and say in substance that a large amount of the debts of the firm of Thomas H. Smith & Son had been paid or compromised,

but that there was then a considerable amount of debts outstanding against it and among them a debt due to Thomas Bloodgood, which, including interest, amounted to twenty thousand dollars and upwards: that such allegations and admissions of George W. Bruen were not accompanied by any qualification or condition, or anything from which it could be inferred that he was unwilling to pay the amount whenever it should be demanded. The plaintiff prayed an account of the assets of Thomas H. Smith in George W. Bruen's hands, the appointment of a receiver thereof and the payment of the amount due upon the note from the property of Thomas H. Smith in the hands of the executor or the devisees who were made parties defendant. George W. Bruen interposed a plea to the bill of complaint which was overruled and an order made giving him sixty days in which to answer. He then answered, exceptions were taken to his answer and sustained, and a further time given him to answer. Pending these proceedings he was superseded as executor, and Herman Bruen who was also named in the will of Thomas H. Smith as an executor, but who had not previously accepted the trust, received letters testamentary upon his estate. A supplemental bill was then filed by the plaintiff claiming the same relief against Herman Bruen which had been prayed against George W. Bruen. Herman Bruen put in an answer to the original and supplemental bill, admitting upon information the making of the note by Thomas H. Smith & Son, and that George W. Bruen in his answer to the bill of complaint filed against him by Iddings stated there was a debt due by the firm to Thomas Bloodgood amounting to $20,000 and upwards including interest. Herman Bruen in his answer stated that the plaintiff's cause of action did not accrue within six years next before the filing of his bill of complaint, and insisted upon the statute of limitations as a bar to the relief prayed. A replication was filed and proofs taken in the cause.

By the proofs it appeared that in 1836, George W. Bruen

Bloodgood *against* Bruen.

had a conversation with Thomas Bloodgood upon the subject of the indebtedness of Thomas H. Smith & Son. He then said, that as soon as he could get the property extricated from the embarrassments it was in, he would pay the claim either by giving bonds and mortgages or real estate to balance it. In 1837, at another interview, he told Mr. Bloodgood that they had not been able to get their property in a condition to pay, but he thought that they would be able to do so soon and he would then pay the claim, and he should be glad to pay it as it should have been paid long ago.

The cause was heard upon the pleadings and proofs at a general term of the superior court of the city of New York, in February, 1851, when a decree was made that the defence interposed by the defendant, Herman Bruen, be overruled, and that the claim of the plaintiff for the principal sum of $10,360·11 secured by the note, with the interest thereon amounting to $16,244·63, and making in the aggregate $26,604·74 was a legal and valid claim against the defendant, Herman Bruen, as executor of the estate of Thomas H. Smith, and that he pay the same with costs from the assets in his hands. As to the other defendants the bill was dismissed with their costs to be paid by the executor from the funds of the estate.

Herman Bruen appealed to this court.

*N. Hill, Jr.*, for appellant.

*Ch. O'Conor*, for respondent.

GARDINER, J.—The bill was filed August 16, 1845, to establish a debt against the estate of Thos. H. Smith, deceased.

The cause of action was a promissory note, made to the plaintiff's testator, by Thos. H. Smith, the deceased, and George W. Bruen in the name of the firm of T. S. Smith & Son, dated the 21st June, 1828, for $10,000 and upwards, payable ninety days after date. The demand consequently

matured on the 22d September, 1828. On the 23d of the same month, Thos. H. Smith died, leaving a will, and his copartner, George W. Bruen, his executor. According to the answer, the firm of Smith & Son and Thos. H. Smith were insolvent at the time of the death of the latter. No proceedings were ever taken to collect the note, and G. W. Bruen became a bankrupt and obtained his certificate in August, 1841. Herman Bruen was appointed executor and qualified on the 19th July, 1847, in the place of George W. Bruen, who was removed from that office. The main question in the cause, is upon the statute of limitations, which Herman Bruen has set up in his answer in bar of the suit. Upon this subject the bill alleges, that George W. Bruen had on repeated occasions, and to divers persons since the date of the said note, admitted that the amount thereof, with interest, remained due and unpaid and promised to pay the same; "and that he did, especially, in an answer in chancery, to a bill there filed, in which James Iddings was complainant and the said George W. Bruen defendant, sworn to on the 18th June, 1842, allege and insist, that among the debts and claims outstanding against the firm of T. H. Smith & Son, was a debt due by the firm to Thomas Bloodgood amounting to $20,000 and upwards, including interest." The object of this averment was, to avoid the objection to the cause of action arising from the lapse of time; an objection which could otherwise have been taken to the bill by way of demurrer. (19 *Ves.* 180; *Story's Eq. Plead's*, § 484; 7 *Paige*, 373.) To effect this object, the facts must be stated in the bill in substance, as definitely as in a replication to a plea of the statute of limitations at law, for which in equity the allegation is a substitute. (19 *Vesey*, 185; 2 *Id.* 84.) The general averment of repeated acknowledgments by George W. Bruen since the date of the note, amount therefore to nothing.

Time is of the essence of an admission which is put forth to avoid a bar by the statute, and to continue or revive a debt otherwise extinguished. The statements in

Bloodgood *against* Bruen.

this bill may have been made within a month of the date of the note, and if the declarations were uttered within ten years, they would furnish no evidence of an existing indebtedness at the commencement of the suit. The complainant must therefore rely upon the admission of George W. Bruen contained in his answer in the Iddings suit, which alone is specifically alleged in the bill.

There are several objections to the sufficiency of this acknowledgment to avoid the bar of the statute. In the first place, it was not made to the creditor, his agent, or any person representing him, but to a stranger, or creditor of George W. Bruen individually, seeking to collect his debt in equity.

" The acknowledgment," says Story, " to take a case out of the statute, must be made, not to a stranger, but to the creditor or some one acting for him, and upon which the creditor is to act or confide." (*Story's Eq. Jur.* § 1521 *a*) It is true that there are dicta to be found in England and in this country to the contrary.

In *Mounstephen* v. *Brooke*, (3 *B. & Ald.* 141,) the leading case in England, the acknowledgment relied upon was contained in a contract of indemnity given by a person who was not a party to a bill of exchange, to one who was, to indemnify him against the payment. The presumption arising from the facts, would be that the indemnitor was the real debtor and not a stranger; at all events the creditor had an interest in and claim upon this very security given to the debtor, which under certain circumstances equity would enforce. In *Clarke* v. *Hougham*, (2 *Barn. & Cress.* 149,) the promise was from a landlord to certify any mistake in receiving more from the tenant for taxes than was due. This was a promise to one tenant, in behalf of all, in relation to a subject in which each had an interest. These cases might be sustained perhaps upon their own peculiar circumstances without impugning the rule above adverted to. But the reasoning of judges had gone beyond

the particular cases, and affirmed that the statute of limitations was only presumptive evidence of the payment of the debt, and that whenever it appeared by the acknowledgment of the party that it was not paid, the admission avoided the bar of the statute. (*Clarke* v. *Hougham, supra,* per Baily, J., *and cases by him cited.*) It follows from this principle, that it makes no difference whether the acknowledgment was accompanied by a promise, or a refusal to pay; (16 *East.* 420; 5 *M. & S.* 75;) and so are the English cases. Now the statute does not speak of a presumption of payment or loss of vouchers. It declares that no action shall be commenced after the given period. The causes of the delay, (unless within the exceptions provided for by the law,) are immaterial. The immunity is absolute. Accordingly, since the courts have come to regard the statute as a law to be obeyed and not evaded, it has been held, that there must be *a promise* in order to revive the debt, and that this must be made by a person competent to contract. (11 *Wheat.* 309.) In other words, that there must be an express contract, or facts from which one may be implied. This I suppose to be the established law in this country. If a contract is necessary, there must be a contractor, and as a general rule, the promise must be made to the person to whom the debt is payable, which forms its consideration, and not to a stranger.

In the second place the admission was not voluntary. George W. Bruen was made *a witness* by Iddings, the trustee of his creditor, and compelled to testify. An admission obtained in this way, can not of itself be made the foundation of a new contract or promise. A mere acknowledgment of an indebtedness, is but evidence from which a promise to pay may be inferred. (1 *Lord Raymond,* 389; 3 *Ship.* 362, *and cases there cited.*) Where it is unconditional, a court or a jury may infer a willingness to pay, or a promise to that effect, from it; because it would be difficult to assign any other reason for a volun-

tary admission of this sort. But where the debtor is placed upon the stand as a witness, nothing can be inferred from the acknowledgment, except an intention to declare the truth. We have seen that the statute of limitations when applicable, is something more than presumptive evidence by payment of the debt. It is a complete bar. No admission of the debtor will avoid the discharge, unless made under circumstances to indicate a willingness to pay. The true rule is given in *Bell* v. *Morrison*, (1 *Peters R.* 351.) "If," say the court, "there be no express promise, but a promise is to be raised by implication of law from the acknowledgment of the party, such an acknowledgment ought to contain an unqualified and direct admission of a present subsisting debt, which the party is liable and willing to pay. If there be accompanying circumstances which repel the presumption of a promise or intention to pay, &c., they ought not to go to the jury as evidence of a new promise." (*Ib. p.* 362.) The third objection is, that the admission was not made by George W. Bruen in his character of executor of the estate of Thomas H. Smith. This is not charged in the bill; and it appears by the abstract in the Iddings suit, that the plaintiff there sought to recover a debt due to Cowperthwaite, from Bruen, by showing that the firm of T. H. Smith & Co., of which George W. Bruen was surviving partner, were the creditors of T. H Smith.

With the debts due from the *firm*, George W. Bruen as executor has no concern. His acknowledgment of the demand in question, was therefore, *prima facie*, in his character of surviving partner. But a surviving partner can not revive a debt against the copartnership so as to charge the estate or interest of the deceased copartner. This question must be considered at rest in this court, since the decision in *Van Keuren* v. *Parmelee*, 2 *Comst.* 523; 1 *Peters*, 373.

But if we assume with the court below, that Bruen as executor of the estate of T. H. Smith admitted this de-

SEL. IV.—47

mand, an admission in that character can not, it seems to me, in the nature of the case, amount to a contract which will bind the estate of the testator. It is no part of the duty of an executor, to subject the estate of his testator to a demand, from which it was by law exempt. If he can do it in any manner, it must at all events be by a positive contract. It has accordingly been held even in England, that there must be an express promise, and that all the executors must unite in it. (*Williams on Executors*, 1659; 2 *B. & C.* 28; *Ryan & Moody*, 416; 3 *Shep.* 360; 12 *Wheaton*, 565; 7 *Connecticut*, 176.) This objection applies to all the testimony offered by the complainant. Indeed, the declarations proved by Ripley were not so strong as those made in the case in 3 *Shep.* The expression there was, " An arrangement will soon be made to pay the note. I calculate to pay it, and always calculated to pay it." In this case the executor said, in one conversation, that as " soon as he could get the property *extricated* from its embarrassments, he would pay that claim, either by giving Bloodgood some bonds and mortgages, or real estate, to balance the claim ;" in the second, " that they had not been able to get their property in a condition to pay it, but thought they would be able to do so soon, and he would then pay the claim, and he should be glad to pay it, as it should have been paid long ago." Both statements were conditional, and were merely indicative of an intent to pay, not absolutely, but upon the contingency, that they could extricate the property from its embarrassments. And the first and strongest statement was clogged with a further condition as to the *manner* of payment, which was to be in bonds and mortgages, or real estate. The estate of Smith was not extricated from its embarrassments in 1850, when the decree in the Iddings suit was pronounced, as we may fairly infer, which was five years after the commencement of this suit. No trust was recited by the will of Thomas H. Smith, to which the ten years' limitation by our statute could apply. Upon this subject I

agree with the learned judge who pronounced the opinion in the superior court, that the usual directions by the testator to pay his debts, were never held to create a technical trust, to which only the limitation above mentioned applies. Upon the whole, I think the decree of the superior court should be reversed and the bill dismissed.

MASON, J. — The rule is well settled that a creditor of a copartnership, one member of which has died, can not sustain a suit in chancery against the representatives of the deceased partner without averring and proving that the surviving partners are insolvent. (*Trustees of Leake & Watts' Orphan house* v *Lawrence*, 11 *Paige*, 80; *S. C. on appeal*, 2 *Denio*, 577.) And where a surviving partner is solvent at the death of the decedent, and afterwards fails, the time allowed for filing a bill to reach the assets of the latter commences at the time of the failure. This case being one of equitable cognizance the limitation expired in ten years. (2 *R. S.* 301, § 50, 52.) The defendant has undoubtedly mistaken the statute. He has alleged in his answer that the plaintiff's cause of action did not accrue within six years before the commencement of the suit, and he insists upon this objection. The bill was filed against the representatives of a deceased partner by a creditor, upon the ground that the surviving partner was insolvent. Assuming that at the time the insolvency of George W. Bruen occurred, and which was in the year 1841, the plaintiff had a valid subsisting demand against the firm of Thomas H. Smith & Son, then as we have already seen the statute of limitations set up in the defendant's answer is no bar, as well for the reason that the defendant has pleaded the wrong statute, as for the reason that even six years had not elapsed from the accruing of the cause of action to the filing of the bill.

The only remaining question is, whether, upon the case made by the pleadings and proofs, the plaintiff shows a valid demand in law against the firm. The sole demand

of the plaintiff is a promissory note, dated June 21, 1828, payable some thirteen years prior to the failure of George W. Bruen the surviving partner.   If the case rested here, the plaintiff's demand against the firm would be barred by the statute.   The plaintiff seeks to take the case out of the statute by alleging in his bill new promises.   In the first place it is alleged that George W. Bruen has on repeated occasions and to divers persons since the date of the note admitted that the amount thereof with the interest thereon remained due, and promised to pay the same.   But it is not alleged that the admissions were made within six years prior to 1841, nor is any time whatever alleged, excepting that they were made since the date of the note.   It is further alleged that George W. Bruen in an answer to a bill in chancery, filed before the chancellor by James Iddings, which answer was sworn to on the 18th of June, 1842, alleged that there was a considerable amount of debts outstanding against the firm of Thomas H. Smith & Co., and among them a debt due by the firm of Thomas Bloodgood, amounting to $20,000 and upwards, including interest.   The bill then states that the allegations so made in the answer in the Iddings suit were not accompanied by any qualification or condition, or any thing from which it could be inferred that George W. Bruen was unwilling to pay such debt whenever it should be demanded.   The defendant in this action, in his answer, admits the making of the note by the firm as alleged in the bill, and that it remains unpaid.   He also admits that he heard George W. Bruen, prior to 1835, say that the note had not been paid, but he states that he had not since then heard any statements or admissions from him respecting it.   He also admits the admissions alleged to have been made by George W. Bruen in his answer to the bill filed by Iddings.

It should be borne in mind that the statements in the last mentioned bill, to which George W. Bruen's answer was responsive, related to the debts and funds of the firm, and the dealings of Bruen with them as surviving partner

The bill made no statements and required no answer con-
cerning his proceedings as the executor of Thomas H.
Smith. The answer as to its admissions must be construed
as affecting the firm merely, and be deemed the admissions
of a surviving partner and not of George W. Bruen as the
executor of Thomas H. Smith. Now, in order to take a
case out of the statute of limitations, there must be a new
promise — a new contract, although founded upon the
original consideration. If the promise is not an express
one the circumstances must be such that it can be fairly
implied. There must at least be a plain admission that the
debt is due and the party is willing to pay it. (*Allen* v.
*Webster*, 15 *Wend.* 284; *Stafford* v. *Richardson*, *ib.* 302;
*Bell* v. *Morrison*, 1 *Peters*, 351; 2 *Com.* 531.) I do not
think the admission in the answer to the bill filed by
Iddings can be brought within this rule. It was a com-
pulsory statement under oath, but the occasion when and
all the circumstances under which it was made repel any
implication of a promise to pay the demand. The admis-
sion in its terms expresses no promise nor expectation nor
intention to pay the debt. An admission of the debt in such
a manner as to indicate an intent to pay is necessary to take
the case out of the statute. (11 *Barb.* 554; 19 *Wend.* 491.)

The bill does not state the date of any other admissions
of the indebtedness, and the general allegations contained
in it are insufficient to bar the operation of the statute.
But if it should be admitted that the defendant has waived
this objection by allowing the proof upon the subject of
the admissions to be given, I do not see that it helps the
plaintiff's case, for the admissions proved are insufficient
to uphold a new promise to bar the statute. There was
nothing said of the amount of the debt to Thomas Blood-
good on either of the occasions mentioned in the proofs,
and no description of the character or nature of the debt
was given, except that it was an old claim against the firm.
This is not sufficient to take such a demand out of the
statute. But again; Thomas H. Smith died in September,

1827, and the firm was by his death dissolved. One of the partners after the dissolution of a copartnership can not by a new promise revive a debt against the firm which has been barred by the statute of limitations. (*Van Keuren* v. *Parmele*, 2 *Coms.* 532.) It would be manifestly unjust in the present case to allow the admissions of George W. Bruen made more than a year after he was declared a bankrupt, to revive this debt against the firm and thereby create an equity in favor of the plaintiff against the estate of his deceased partner. As we have seen, the equitable cause of action against the estate of Thomas H. Smith, could only arise upon the insolvency or bankruptcy of George W. Bruen. Now the latter was declared a bankrupt more than a year before swearing to the answer in the Iddings suit, in which the admission was contained. I assume that if the debt against the firm was barred by the statute at the time George W. Bruen became a bankrupt, the plaintiff can not sustain a bill in equity against the representatives of Thomas H. Smith to enforce its payment. I am not aware that this question has been determined in our courts; but it seems to me that if the note is not a legal debt against the firm, it can not be a valid claim in equity against the estate of the deceased partner. For these reasons I am of the opinion that the debt against the firm was barred by the statute of limitations at the time George W. Bruen became a bankrupt, and consequently that there was never any equitable cause of action in favor of the plaintiff against the estate of Thomas H. Smith the deceased partner; and that the judgment of the superior court should be reversed and the bill of complaint be dismissed with costs.

RUGGLES, Ch. J., and JEWETT, MORSE and WILLARD, JJ., con · curred in the conclusions of judges Gardiner and Mason.

TAGGART, J., gave no opinion.

JOHNSON, J., took no part in the hearing of the case

Judgment reversed and bill of complaint dismissed.