FLETCHER v. UPDIKE.

*Husband and wife — husband's right to wife's property — Consideration — Stat-ute of limitations — promise necessary to revive claim when statute has run.*

A husband who had married his wife in 1846, received moneys belonging to his wife, prior to 1852. *Held*, that in the absence of an agreement on his part to refund the moneys to his wife, the same became his absolute property by virtue of his marital rights, and a subsequent promise to refund, being without consideration, would not create a legal obligation against him.

A portion of the moneys received was the avails of the wife's real property. Twenty-two years after its receipt, the wife presented a claim therefor against the estate of the husband, who had died in the meantime. *Held* that the claim was barred by the statute of limitation ; that a new promise to pay the same, made to a person other than the wife or her agent, would not revive the obligation ; neither would a parol promise revive it, as to such part of the moneys as was received since the adoption of the Code, and that the wife was under no disability which could obviate the objection of the statute having run.

APPEAL by Adelia P. Fletcher and others, heirs at law and next of kin of Ira Updike, deceased, from a decree of the surrogate of Schuyler county admitting a claim against the estate of said deceased, made by his widow, Eleanor D. Updike. Sufficient facts appear in the opinion.

*Hurd & Fletcher*, for appellants.

*S. L. Rood* and *M. J. Sunderlin*, for respondent.

BOCKES, J. This is an appeal from the decree of the surrogate of Schuyler county, allowing to the respondent against the estate of her deceased husband, the sum of $2,491.23, the amount of her claim presented to that officer for allowance, The items constituting the claim, as they appear in the sworn bill, were four in number, all for cash alleged to have belonged to the respondent, and charged to have been received by the husband as follows: $552 February 12, 1847; $240 February 13, 1847; $8 in the year 1847; and $65 in 1856. Interest was computed on these items to September 3, 1874, the date of the decree, making the aggregate sum $2,491.23 allowed against the estate.

It appears from the proof introduced before the surrogate, that the respondent and the deceased intermarried in 1846; hence all those sums were received by the husband during coverture. It is also made to appear that the moneys were not received in gross sums as charged in the bill, and above given with dates; but came to the hands of the husband at various times, and in comparatively small sums. All, however, were received between February 12, 1847, and perhaps about June, 1852, except the avails of the Pierson note, which was paid in 1856.

Now in the absence of any agreement on the part of the husband to refund those moneys to his wife, the same became his absolute property on being reduced to possession, in virtue of his marital rights. Nor would a promise by the husband to refund the money to the wife, made subsequent to its reception, create a legal obligation against him. Such promise would be without consideration and void. But it is insisted that the wife's funds were here permitted to go into the hands of the husband under a promise on his part that they should be restored and repaid to her. There is some evidence in support of this position, although such fact is not satisfactorily and conclusively proved; certainly not as to all the money claimed by the respondent.

However, let it be conceded on this appeal, first, that the deceased prior to June, 1852, received the avails of three pieces of real property belonging to his wife, the respondent, amounting to $800 with the accrued interest thereon, and second, that such avails with the accrued interest were received by him under an agreement with his wife, that he would refund those moneys to her; then in the most favorable aspect of the case for the respondent, there existed a claim or debt *then due*, against her husband in her favor for the amount of her funds thus received by him, principal and interest. Now, inasmuch as about twenty-two years elapsed before the claim was presented to the surrogate for allowance, it was barred by the statute of limitation, unless saved from the effect of the statute by a new and valid promise to pay, or such a recognition of the debt or obligation as would have the effect of a new promise. It is claimed that such promise was repeatedly made by the deceased husband, and this brings us to consider the case on the proof bearing on this point.

It is proposed to refer to the evidence given by the witnesses in the order in which they were examined before the surrogate.

Mrs. Heist, the first witness, spoke to the arrangement or agreement under which it is claimed the money was received by the husband. Her statement related to a period prior to 1852, and she says "this was the only promise I ever heard him make." No new promise was proved by this witness.

Mr. H. Pierson speaks of two conversations he had with the deceased, one in March, 1872, the other the preceding year in which the latter admitted in substance, that he owed his wife and intended to pay her. These conversations, it must be remembered, were with the witness, not with the wife. This witness also states: " I have heard him say to her (his wife), he would pay her all he owed her, but would pay no compound interest." It does not appear when this promise was made — hence its value as a new promise to take the case out of the statute is of little value. There are some facts indicating that this may have been said about 1871 or 1872, but there is nothing definite and satisfactory in that regard. To Mr. Harmon the deceased admitted in substance, in September or October, 1873, that he owed his wife for money he had of her. Mr. A. H. Pierson speaks to conversations with the deceased in the years 1859, 1860 and 1861, but he does not say the deceased made any promise to the wife to pay. She wanted a mortgage, but he declined to give one. The witness adds, that in a conversation with the deceased had about the first of the preceding August he said: "I will pay my wife every cent I owe her." This was said to the witness personally. Several other witnesses were examined, but nothing was proved by any of them bearing on the subject of a new promise.

Now it will be seen that the most of the evidence above stated or alluded to is of no value on the point under examination. The admission and promise sworn to by the witnesses, except that spoken of by Mr. H. Pierson, were made to mere strangers. An acknowledgment or promise, not made to the creditor, nor to any one acting in his behalf, is not sufficient to revive a debt barred by the statute. *Bloodgood* v. *Bruen*, 8 N. Y. 362 ; *Wakeman* v. *Sherman*, 9 id. 85 ; *Henry* v. *Root*, 33 id. 534, 535.

The case, therefore, rests on the evidence of Mr. H. Pierson, as regards a new promise ; and on the sole statement testified to by him, that he had heard the deceased say to his wife, "he would pay her all he owed her." As before suggested, it does not appear when this was said, although perhaps it may be presumed to have been

spoken in 1871 or 1872. But to make it available to renew or continue the debt or obligation, it should have been made distinctly to appear that the promise was made at a time when its effect would be plainly to avoid the statute. However, the promise was by parol, as were all the statements and admissions relied on by the respondent to sustain the claim. The Code (§ 110) provides that no acknowledgment or promise shall be sufficient evidence of a new or continuing contract whereby to take the case out of the operation of the statute, unless contained in some writing, signed by the party to be charged thereby. The promises and admissions proved in this case were by parol only. They were, therefore, insufficient to avoid the statute. *Shapley* v. *Abbott*, 42 N. Y. 443. It is suggested that the claim or obligation in this case accrued before the Code took effect, hence that it may be revised and continued, by a parol promise. Code, § 73 ; *Van Allen* v. *Feltz*, 1 Keyes, 332 ; *Lansing* v. *Blair*, 43 N. Y. 48. But the claim here sought to be enforced accrued principally, if not entirely, since July 1, 1848, the time when the Code went into operation. The land contracts, it is true, were made in 1847 ; but the alleged liability of the deceased did not rest on the contracts, but accrued against him, as was claimed, for money received by him thereon. There can be no pretense of claim against him under the proof until the money came to his hands. Precisely how much he had received prior to July 1, 1848, is not clearly shown. He had received $35 on the Heist contract, and $8 from Mr. Pierson prior to that date, and probably one or two payments of a little over $100 each on the sale to Hedden. But all the balance of the $800 (the amount of the land contracts), with the accrued interest, came to his hands after the Code went into effect. To that extent, certainly, the claim was barred by the statute of limitations, as the case is presented on this appeal.

The respondent was under no disability which can obviate the objection urged. *Adams* v. *Curtis*, 4 Lans. 164; *Minier* v. *Minier*, id. 421; *Wright* v. *Wright*, 54 N. Y. 437; *Dunham* v. *Sage*, 52 id. 229. It may be questioned here whether the agreement or promise testified to by Mrs. Heist, which is here the basis of the claim, should have application to any moneys received by the deceased prior to July 1, 1848. Mrs. Heist speaks of one occasion only, and says this was the only one when any promise was made by the deceased, of which she had any knowledge, and in substance makes that occasion when, or immediately after, Mr. Hedden made a

payment. Mr. Hedden made three payments, one and perhaps two of which were made, as may be inferred, after July 1, 1848. Whether the conversation spoken of by Mrs. Heist occurred on the occasion of the first, second or third payment does not appear. She says, "this promise was made *after one* of the payments was made." As before stated, a promise to pay after the money becomes his own absolute property would raise no legal obligation against him ; and if made to apply to moneys received by him after July 1, 1848, then the claim accrued subsequent to the time when the Code took effect, hence could not be revived or continued by a parol promise. But it is unnecessary to discuss the case with a view to determine just when the conversation occurred to which Mrs. Heist testified, nor just how much came to the hands of the deceased subsequent to July 1, 1848.

On a re-trial, perhaps the case may be made clear, on these points. It is sufficient on this appeal, that the claim allowed by the surrogate was to a very great extent, if not wholly, barred by the statute of limitation. A reversal of the decree must be ordered.

The case has been above considered with reference to the respondent's claim for moneys paid to her deceased husband upon the land contracts, which moneys were received by him during and prior to the year 1852. The surrogate also allowed for money received by the deceased on the Pierson note, paid in 1856. It is difficult to find any ground to support such allowance. The note belonged to the respondent at the time of her marriage, after which it came to the possession of her husband, who, in 1856, received payment of it and delivered it up to the maker. There is no evidence that he held the note or received the money other than as his own property. In the absence of any agreement with his wife to restore or refund the money, or its equivalent to her, there was no obligation resting on the husband to do so. The note and its avails belonged to the husband in virtue of his marital rights, unless his claim thereto was expressly waived ; and there is no evidence in the case of such waiver. The promise testified to by Mrs. Heist was made many years prior to the payment of the note to the husband. Besides, that promise had reference to the avails of the three land sales, if indeed it can be construed to have application to any other than to payments, or to a payment made by Mr. Hedden. And if the money became the property of the husband when paid him on the note, a promise thereafter made to restore it to his wife

would be void for want of consideration — hence, would create no legal obligation against him. As the case stands before us on the evidence, the money received by the deceased in payment of the note was his own. Its reception by him did not make him debtor to his wife ; and in this view, a promise by him that he would pay her all he owed her neither continued nor created a liability.

The decree appealed from must be reversed, and the proceedings must be remanded to the surrogate's court, for rehearing and retrial. The costs of this appeal should abide its final disposition in that court.

*Ordered accordingly*