JOHN L. EVERITT, PROSECUTOR, v. ISAAC D. WILLIAMS, ADMINISTRATOR, &c., OF PETER MORRIS, DECEASED.

1. The statute of limitations is not suspended by a representation made by an administrator to the Orphans' Court, to procure an order to sell lands to pay debts, with respect to debts included in the representation.

2. The order to sell lands to pay debts is not such an adjudication in favor of a creditor whose debt is included therein as prevents the administrator's setting up the statute of limitations in an action against him for the debt.

3. If the proceeds of a sale of lands under such an order are impressed with a trust for the payment of debts, the administrator is not thereby estopped from resorting to the statute at law. If relief may be had on that ground it must be sought in a court of equity.

4. The insertion of a debt not yet barred by the statute of limitations, in a representation of debts made by an administrator to the Orphans' Court, for the purpose of procuring an order to sell lands to pay debts,

Everitt v. Williams.

is not such an acknowledgment as takes such debt out of the statute or as estops the administrator from setting up the bar of the statute against it.

On *certiorari*.

An action of debt was commenced August 9th, 1879, in a justice's court, by Everitt against Williams as administrator of Peter Morris, deceased, upon a note made by deceased to C. Roe for $53.31, dated January17th, 1872, and payable one day after date.

Morris died in July, 1877, and Williams was appointed administrator July 19th, 1877. November 5th, 1877, Williams made a statement and representation of the personal estate and debts of deceased to the Orphans' Court, and procured a rule to show cause why Morris' real estate should not be sold to pay debts. The note (then owned by Roe,) was included in the statement. Upon the rule to show cause the Orphans' Court directed the real estate to be sold. The sale produced more than the deficiency shown by the administrator's representation. The defence was rested solely on the statute of limitations, and it was held to be unavailing both in the justice's court and in the Common Pleas on appeal.

The prosecutor seeks to reverse the judgment as erroneous, on that ground.

Argued at November Term, 1882, before Justices SCUDDER and MAGIE.

For the prosecutor, *L. Van Blarcom.*

For the defendant, *Roe & Shepherd.*

The opinion of the court was delivered by

MAGIE, J. An action on the note would have been barred by the statute of limitations on January 21st, 1878, but for the death of the maker in July, 1877. By force of section 9 of the statute (*Rev., p.* 595,) the period of six months succeeding his death is not to be computed as part of the six years

which otherwise would bar the action. Allowing for that period, an action on the note was barred on July 21st, 1878. This action, not having been brought until August 9th, 1879, the defence of the statute should have prevailed unless the facts shown avoid the effect of the statute. It is contended that the statute is suspended and ceases to run as against debts stated in a representation to the Orphans' Court, made for the purpose of procuring a sale of lands for their payment.

None of the exceptions of the statute cover this case. Implied exceptions cannot be engrafted on the statute. *Veghte* v. *Freeholders*, 15 *Vroom* 509. In the case of *De Kay* v. *Darrah*, 2 *Green* 288, an act barring an action against a representative of a deceased person for six months after his death was held not to raise an implication that the statute was suspended or ceased running during that period. There is nothing in this case to raise such an implication, if we had the power to give effect to it.

It is next contended that the order to sell lands is an adjudication in favor of creditors, which prevents a resort to this defence. Such a view was taken in *Moores* v. *White*, 6 *Johns. Ch.* 360, 375, upon a statute similar to ours. But the opinion on that point was not required for the decision of the case.

A comparison of the provisions of section 70 and the following sections of the Orphans' Court act, (*Rev., p.* 766,) under which the application in this case was made, with section 82 and the following sections, relating to proceedings in case of insolvent estates, settles that the order to sell in the former case is not an adjudication affecting the creditor. He has no notice of the application and no standing in court, and could not contest the representation. The rule to show cause is directed only to those interested in the real estate. The adjudication is made as between the personal representative and the heirs or devisees, and is only an adjudication that there is a deficiency of personal estate and that it is necessary to resort to the real estate to pay debts. In the case of *Miller* v. *Pettit*, 1 *Harr.* 421, it was held, on a statute substantially like this, that the institution of such proceedings to sell lands did not

prevent suits by the creditors, and that the Orphans' Court could not determine thereon who were creditors nor adjust the amounts due them.

It is further contended that the administrator was estopped from this defence because, by the sale, he acquired sufficient assets to pay this debt. It is insisted that the moneys so received are impressed with a trust for that purpose. If this be true, the subject is within the exclusive jurisdiction of a court of equity. Courts of law cannot administer relief from the inequity thus resulting. *Veghte* v. *Freeholders, supra.* Even in that court it may be questioned whether the bar of the statute would not apply. *McClane's Adm'r* v. *Shepherd's Ex'r*, 6 *C. E. Green* 76.

It is also insisted that the debt in this case was revived by an acknowledgment or new promise of the administrator in the manner now required by the statute.

A personal representative has the power to remove the bar of the statute of limitations by a new promise. *Shreve* v. *Joyce*, 7 *Vroom* 44. In that case it was intimated, though not decided, that such a promise may be inferred from. his acts, language or conduct, if they justify such an inference. No express promise on the part of the administrator is claimed in this case. Reliance for successful avoidance of the statute on this point is put solely on the acknowledgment of this debt contained in the representation to the Orphans' Court. It is claimed that a new promise may be inferred therefrom, and that such an inference may be drawn against an administrator. If an administrator may expressly promise to pay a debt of his intestate, so as to avoid the bar of the statute, I can perceive no reason for excluding the inference of a promise on his part, arising from acts or acknowledgments sufficient to justify such an inference. To be sufficient for that purpose, the acts or acknowledgments ought, doubtless, to be plain and unequivocal. But if the inference be fairly drawn, I do not think that the implied promise should be less effective than the express promise. The language of Lord Tenterden's act, now adopted in our statute, respecting the acknowledgments

as well as the promises of executors and administrators, seems to require this conclusion. For it is now well settled that an acknowledgment, in order to take a debt out of the statute, must not only not negative, but must justify the inference of a new promise. 3 *Pars. on Cont.*, § 67.

But I do not conceive it necessary to decide this question, which has been much discussed elsewhere with varied results. For, assuming that a new promise may be inferred from the acts of an administrator, I am of opinion that the act relied on in this case does not justify such an inference, and is not sufficient to take this debt out of the bar of the statute. In determining the inference to be drawn, we are entitled to consider the situation of the person acknowledging, the intent with which the acknowledgment was made, and the quality of the act relied on as an acknowledgment.

If a living debtor, morally bound for the payment of a debt, acknowledge its continued existence, whether before or after the bar of the statute has attached, the inference of a new promise to pay seems reasonable and necessary. But in this case the acknowledgment is made by a mere representative of the deceased debtor, and before the debt is barred by the statute. No moral obligation lies on him in respect to the debt. His obligation is solely in a representative capacity. The inference of a new promise is therefore by no means necessary.

The intent of the acknowledgment is plain. Its design was to procure the action of the court. It had no reference to the statute of limitations. There was no intent to continue the existence of this debt. Ample time remained to the creditor to bring his action before the bar of the statute intervened. There was nothing in the act to justify the creditor in delay, so there is no element of estoppel in the case as there was in *Quick* v. *Corlies*, 10 *Vroom* 11. The inference of a new promise is not only not necessary, but one quite beside the intent and design with which the acknowledgment was made.

In addition, the acknowledgment was not voluntary on the part of the administrator, but on compulsion. The enforced

acknowledgment of a debt by a living debtor has been, and I think properly, held not to justify the inference of a new promise to pay. *Bloodgood* v. *Bruen,* 8 *N. Y.* 362; *Pars. Merc. L.* 237, and cases cited.

A voluntary acknowledgment on the part of an administrator might afford a strong inference of a new promise. Thus if a debt, already barred by the statute so that the administrator might ignore and reject it, were acknowledged by him as still existing, or were included in a representation, required to be made, of existing debts, the inference of a new promise would be irresistible. Such was the case of *Smith* v. *Poole,* 12 *Sim.* 16, in which Vice Chancellor Shadwell held that where an administrator, cited by a third person, exhibited in the Ecclesiastical Court an account of assets and debts, in which A's debt, then barred by the statute, was entered, the entry was a sufficient acknowledgment, under Lord Tenterden's act, to take A's claim out of the statute.

In the case before us the administrator was compelled by law to insert this debt, which was not barred by the statute, in his representation. Having knowledge of it, he could not ignore or reject it. He had no option or choice. His duty forced him to acknowledge its existence; but from such an act no reasonable inference can be drawn of a new promise which would continue this debt (and, in a similar way, every debt contained in the representation,) for a renewed period of six years. In my judgment, the acknowledgment relied on in this case does not avoid the bar of the statute.

An interesting question is raised by the contention of the prosecutor that an administrator cannot, by either an express or implied promise, remove the bar of the statute so as to affect the rights of heirs-at-law, who are entitled to the surplus of the proceeds of the real estate. *Rev.,* p. 769, § 78. But since the acknowledgment here relied on is not effective at all, the question need not be determined.

The administrator gave notice to the plaintiff below, pursuant to section 63 of the Orphans' Court act. *Rev.,* p. 765. Defendant contends that this notice was a waiver of the de-

fence of the statute of limitations. I cannot perceive how a notice that a claim is disputed and will be contested can be deemed a waiver of the very ground of dispute and contest.

For these reasons I think the defence of the statute should have prevailed below. The judgment must therefore be reversed, with costs.