**MIWON, U.S.A., INC., Plaintiffs,**

**v.**

**Robert CRAWFORD, Mohawk Gloves, Inc., Down Industries of America, Inc., and Crawford House, Inc., Defendants.**

**No. 85 Civ. 0136 (LBS).**

United States District Court,
S.D. New York.

Nov. 4, 1985.

Harold L. Krainin, New York City, for plaintiffs.

Robert Crawford, pro se.

SAND, District Judge.

Plaintiff, Miwon, U.S.A., Inc. ("Miwon"), a New Jersey corporation, brought this action on January 7, 1985, against Robert Crawford, a Pennsylvania resident, and Mohawk Gloves, Inc. ("Mohawk"), Down

Industries of America, Inc. ("Down") and Crawford House, Inc. ("House"), three Pennsylvania corporations. Defendant Crawford is an importer of jackets and a principal shareholder and officer of Mohawk, Down and House.[1] Plaintiff alleges that defendants failed to pay plaintiff for a quantity of down jackets purchased in October, 1979 and have been unjustly enriched in the amount of $127,095.00.[2] Plaintiff further alleges that defendant Crawford himself has been unjustly enriched by his misappropriation of corporate funds and his fraudulent deprivation of plaintiff's remedy and that this provides sufficient justification for piercing the corporate veil and rendering Crawford personally liable. Defendants have moved to dismiss the action, pursuant to F.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. In the alternative, defendants request that this Court transfer the case to Pennsylvania "[f]or the convenience of parties and witnesses" pursuant to 28 U.S.C. § 1404(a). Plaintiff crossmoves for summary judgment pursuant to F.R.Civ.P. 56(b). Federal jurisdiction is invoked on grounds of diversity of citizenship. 28 U.S.C. § 1332.

## FACTS AND HISTORY OF LITIGATION

■ In October, 1979, both plaintiff and defendant Crawford were in the offices of Nissho Iwai American Corporation ("Nissho"), New York, New York. Nissho serves as a financing company for transactions when they are beyond the means of defendant Crawford and his companies. See Supp. Statement to Crawford Deposition.[3] On this date, defendant Crawford arranged to purchase down jackets from plaintiff for an alleged total price of $127,-095.00. Complaint ¶ 11. Although these arrangements were allegedly made on behalf of Mohawk, the invoice to the department store which purchased and received the goods from defendants, Marshalls, was from Down. See Crawford Dep. at 24. As Mr. Crawford explained, "I have both companies and I do it under either one." Id.[4]

The arrangements provided that Mohawk would "take the jackets, ship them to [Marshalls in Boston, Massachusetts], do the invoices, get paid and pay [plaintiff]." Id. at 20. Mr. Crawford arranged for the shipment of the goods by common carrier and allegedly received payment from Marshalls in January, 1980. Id. at 21–25. He originally put this check into his personal checking account and then transferred it to Mohawk's account. Thereafter, the money was used to pay off the latter's debts. See id. at 26–29.

Plaintiff contacted Crawford regarding nonpayment and a series of conversations and meetings ensued. Apparently, an agreed-upon payment plan fell apart the day after it was arranged, and the parties "proceeded again". Id. at 29. Mr. Crawford allegedly had explained to Miwon representatives that the money had come in late and there had been a "strong inference" from Hazelton National Bank to pay off Mohawk's loans. Id. at 29, 48. Crawford also had expressed a willingness to

1. At a deposition in a related prior proceeding, see note 3 infra, Mr. Crawford stated he was the president and sole shareholder of both Down and Mohawk. Crawford Dep. at 8–9.

2. Mr. Crawford arranged to purchase the jackets from plaintiff for $18.50 each and to sell them for $18.25 each. Crawford Dep. at 44.

3. Depositions taken in a prior action generally are admissible in a subsequent action if there is a substantial identity of issues and parties in the two actions. See F.R.Civ.P. 32(a); Baldwin-Montrose Chemical Co. v. Rothberg, 37 F.R.D. 354, 356 (S.D.N.Y.1964); Hertz v. Graham, 23 F.R.D. 17, 22 (S.D.N.Y.1958), aff'd, 292 F.2d 443 (2d Cir.), cert. denied, 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed.2d 192 (1961). These requirements have been construed liberally "in light of the twin goals of fairness and efficiency." See Hub v. Sun Valley Co., 682 F.2d 776, 778 (9th Cir.1982). Given this liberal construction, the similarity of issues and parties in Nissho and the instant case, and the absence of any opposition by defendants, this Court finds these admissibility requirements to be satisfied.

4. Mr. Crawford apparently used all of his companies' names interchangeably. For example, Marshalls complained of a delivery shortage not to Mohawk or Down, but to House. See Crawford Dep. at 50.

"sit down and work something out." *Id.* at 27.

Miwon initially filed suit on August 15, 1980 against Nissho, believing the latter was liable for the purchase price of the down jackets. Nissho denied the purchase and asserted that, if it was liable, it was only because Mr. Crawford, a third-party defendant, had purchased the jackets on its behalf without Nissho's authority. *See Miwon, U.S.A., v. Nissho-Iwai American Corp.*, No. 80 Civ. 4731 (S.D.N.Y. May 7, 1984), slip op. at 1–2. All of Nissho's claims against the third-party defendants, Mr. Crawford, Down, and Mohawk, were dismissed prior to submission of the action to the jury. *Id.* at 1. The jury returned a verdict in favor of Nissho, and Miwon thereafter moved, pursuant to Fed.R.Civ.P. 15(b), to amend its complaint to assert claims directly against the third-party defendants. *Id.* The Honorable Charles S. Haight, Jr., denied this motion on the grounds that the parties had not expressly or impliedly consented to the trial of these issues and the third-party defendants would plainly be prejudiced by such amendments. *Id.* at 3–4.

As already stated, plaintiff filed the present action on January 7, 1985.[5] On April 19, 1985, a default judgment was entered against defendants for their failure to answer the complaint. Plaintiff subsequently agreed to vacate this default judgment so defendants would have a further opportunity to appear and plead in this action.[6]

### A. Defendants' Motion to Dismiss Pursuant to F.R.Civ.P. 12(b)(6).

Defendants pray for dismissal of plaintiff's suit on the ground that plaintiff failed to file this action within the applicable time period and is now barred by the statute of limitations. According to defendants, the sale took place in November, 1979. Defendants' Reply Memo. at 1. Since New York's Uniform Commercial Code[7] provides for a four year limitations period for "[a]n action for breach of any contract for sale," N.Y.U.C.C. § 2–725(1) (McKinney 1964), defendants allege that *all* of plaintiff's claims were barred after November, 1983. Defendants' Memo. at 1.

Plaintiff distinguishes between the first two counts and the last four counts in its complaint. Plaintiff alleges that while the former are predicated on causes of action for the sale of goods, the latter are grounded in fraud and therefore subject to a six year limitations period. Plaintiff's Memo. at 6. Plaintiff further alleges that the limitations period for the contract claims was tolled pursuant to N.Y.Gen.Oblig.Law § 17–101 (McKinney 1978) "under circumstances amounting to an absolute and unqualified acknowledgment of the debt being due." Plaintiff's Memo. at 6.

■ This Court first notes that the running of the applicable statute of limitations is a proper ground for a motion to dismiss for failure to state a claim for which relief can be granted. *See* 2A Moore's Federal Practice ¶ 12.10 (2d ed. 1985). Moreover, federal courts look to applicable state limitations statutes, including their tolling provisions, in determining the timeliness of actions relating to state-created rights. *See id.* at ¶ 3.07[2]. In New York, actions for breach of contracts for sale are governed by the Uniform Commercial Code § 2–725(1). As already noted, it requires commencement of an action within four years after the cause of action has accrued. Article 2 of the U.C.C. also provides that

---

**5.** An amended complaint was filed on February 4, 1985.

**6.** The order vacating the default judgment was entered on May 6, 1985 and defendants were given an additional fourteen days to appear, answer, or otherwise move.

**7.** Neither plaintiff nor defendants dispute the applicability of New York law and, in fact, all parties freely rely thereon. This alone, coupled with the fact that the agreement at issue was made in New York and both the instant action and *Nissho* were brought in New York, makes the application of New York law appropriate and reasonable. *See also Hutner v. Greene*, 734 F.2d 896, 899 (2d Cir.1984) (New York's "paramount interest" test provides for the application of the law of the jurisdiction having the greatest interest in the litigation in contractual disputes).

"[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." N.Y.U.C.C. § 2–725(2) (McKinney 1964). In the instant case, the causes of action allegedly based on the sale of goods transaction accrued when defendants failed to pay Miwon in January, 1980, after receiving the check from Marshalls. *See Triangle Underwriters, Inc. v. Honeywell, Inc.,* 457 F.Supp. 765, 768 (E.D.N.Y.), *modified,* 604 F.2d 737 (2d Cir.1979). ("The date when the breach occurred depends on what the agreement between the parties was.") Thus, the claims at issue became time-barred in January, 1984 rather than as defendants alleged in November 1983. In any event, however, their dismissal is still in order unless some tolling provision is applicable.

■ The U.C.C. does not alter the law on the tolling of limitations periods. *See* N.Y. U.C.C. § 2–725(4) (McKinney 1964). Thus, New York's General Obligations Law § 17–101 also applies to sale of goods claims. New York's Gen.Oblig.Law § 17–101 modifies the common-law rule which recognized oral or written acknowledgments to perform previously defaulted contractual obligations. *See* N.Y.Gen.Oblig.Law § 17–101 (McKinney 1978); *Scheuer v. Scheuer,* 308 N.Y. 447; 126 N.E.2d 555 (1955). It provides that an acknowledgment sufficient to toll the statute of limitations must be in writing and signed by the party to be charged. *See Schmidt v. Polish People's Republic,* 579 F.Supp. 23, 29 (S.D.N.Y.), *aff'd,* 742 F.2d 67 (2d Cir.1984). If the acknowledgment recognizes an existing debt and contains nothing inconsistent with an intention on the debtor's part to repay it, the limitations period begins to run anew as of the date of this acknowledgment.

*Id.; see also Manchester v. Braedner,* 107 N.Y. 346, 349; 14 N.E. 405, 406 (1807).

Plaintiff alleges that defendant Crawford's statements in a signed deposition taken pursuant to the *Nissho* case and his testimony at that trial meet the standards for acknowledgment of a debt due. Plaintiff's Memo. at 10. We note that Crawford's trial testimony did not produce any writing referring to the debt and therefore fails to meet the "threshold statutory requirement for an acknowledgment." *Schmidt v. Polish People's Republic,* 579 F.Supp. at 30.[8] At the deposition, which was subscribed and sworn to by Mr. Crawford on September 16, 1981,[9] Mr. Crawford stated the nature of his agreement with Miwon: "Mohawk was to take the jackets, ship them to the store, do the invoices, get paid and pay Miwon." He also stated that neither he nor his companies had ever paid Miwon. Moreover, he related that he had expressed a willingness to "work something out" with Miwon once the latter contacted him and had thought "we had an agreement and a payment plan to work things out and then the next day it seemed that it fell apart." Crawford Deposition at 20, 27, 29. It is these comments which plaintiff alleges tolled the statute of limitations pursuant to New York's Gen. Oblig.Law § 17–101.

We agree with defendant's contention that these statements did not toll the statute of limitations. First and foremost, the source of these statements would preclude this Court from lifting the limitations bar. In *Bloodgood v. Bruen,* 8 N.Y. 362 (1853), the debtor acknowledged the debt on the witness stand. *See id.* at 368–69. The New York Court of Appeals held that "nothing [could] be inferred from the acknowledgment, except an intention to declare the truth." *Id.* at 369. According to

---

**8.** At trial, Mr. Crawford was asked if he'd said on direct examination that if he had been paid, plaintiff would have been paid. Plaintiff's Memo. at 11. Mr. Crawford responded affirmatively. *Id.* It is this response that plaintiff also relied on as evidence of defendants' acknowledgment of the debt.

**9.** The deposition was taken on July 7, 1981. On September 16, 1981, when Mr. Crawford subscribed and swore to the deposition, he also submitted a supplemental statement to clarify his relationship with Nissho in both the transaction at issue and prior transactions. In this statement, he explained that Nissho had had nothing to do with the Miwon transaction.

the New York Court of Appeals, an admission obtained in such a manner cannot be made the foundation of a new promise. *Id.* at 368.

In *Bloodgood,* the debt also had been admitted in the answer to the bill in chancery filed by the creditor. Again, the Court held a "compulsory statement under oath" to "repel any implication of a promise to pay the demand." *Id.* at 373. The Court also emphasized that "[a]n admission of the debt in such a manner as to indicate an intent to pay is necessary to take the case out of the statute [of limitations]." *Id.*

The statements alleged by plaintiff to constitute defendants' acknowledgment of the debt are of the same genre as those held insufficient in *Bloodgood.* In the *Nissho* case, Mr. Crawford was a third-party defendant and therefore a party at least in relation to defendant and third-party plaintiff Nissho. If he had failed to appear at the deposition taken by Nissho, he would have been liable for the penalties of F.R. Civ.P. 37(d). *See* 8 Wright & Miller, *Federal Practice and Procedure;* Civil § 2107.[10] Moreover, at the deposition, Mr. Crawford made his statement under oath, *see* Fed.R. Civ.P. 30(c), and therefore was bound to truthfully relate the events that had transpired. Such "compulsory statement[s] under oath" cannot constitute an acknowledgment sufficient to toll the four year limita-

tions period pursuant to New York Gen. Oblig.Law § 17–101. *See Bloodgood,* 8 N.Y. at 373. From them, the only thing we may infer is Mr. Crawford's "intention to declare the truth." *Id.* at 369.

Even if the context of Mr. Crawford's remarks were not dispositive, their content would serve to preclude characterization as an acknowledgment. In *Pet, Inc. v. Lustig,* 77 A.D.2d 455, 433 N.Y.S.2d 934 (N.Y. App.Div.1980), a debtor had acknowledged at an examination before trial[11] in a related proceeding that he had borrowed $11,-115.02 from a close corporation of which he was a principal officer and stockholder and that he had not repaid it. 433 N.Y.S.2d at 935.[12] The Court held that this "was not an implied promise to revive the outlawed debt and to pay it." *Id.* The statements subscribed to by Mr. Crawford in the deposition at issue here do not amount to more than this. Although Mr. Crawford also mentioned the existence of a payment plan which fell apart the day after it was reached, his remarks can better be characterized as a description of the 1980 meetings with Miwon than as an implied promise to pay said debts in the future.

A survey of cases in which a written acknowledgment has been deemed sufficient to toll the limitations period illustrates the deficiencies in plaintiff's reliance on the aforementioned statements. In *Clarkson Co. v. Shaheen,* 533 F.Supp. 905

---

**10.** F.R.Civ.P. 37(d) enables a court to "make such orders in regard to the failure as are just, *see* F.R.Civ.P. 37(b)(2)(A), (B), and (C), and in addition or in lieu of such an order, to require the party or his attorney to pay reasonable expenses.

**11.** The statements in *Pet, Inc.* were made at an examination before trial; however, it is unclear whether the court based its holding on the nature of the debtor's remarks or the context in which they were spoken. The court first cited to *Lew Morris Demolition Co. v. Board of Educ. of New York,* 40 N.Y.2d 516, 387 N.Y.S.2d 409, 355 N.E.2d 369, where a writing which stated "the payment of the $13,650 shall be deemed 'not as a final payment or payment of any character under said contact' but as 'a partial settlement without prejudice to the rights of either party'" was viewed as not recognizing an existing debt and therefore insufficient to con-

stitute an acknowledgment. This suggests that the court was more interested in the statements than their context. Although it also cited to *Bloodgood v. Bruen,* 8 N.Y. 362, 368 (1853) for this particular aspect of its holding, the New York Court of Appeals, at the particular page cited, discussed both the language and the context of certain statements. It thus appears that the nature of the language used rather than its context was dispositive.

**12.** Petitioner had obtained a judgment against the Nifty Food Corporation in a federal court action prior to instituting an action against Mr. Lustig. In relation to the federal court action, petitioner had examined Mr. Lustig because he was the Chief Executive Officer of Nifty. It was during this examination before trial that Mr. Lustig acknowledged the debt. *See* 433 N.Y. S.2d at 935.

(S.D.N.Y.1984), for example, debtor's acknowledgment of its " 'longstanding' " obligation to creditor in its annual report and the fact that it carried the debt on its books for at least two years was considered a "clear recognition of the continuing validity of the obligation." *Id.* at 932. In *United Rubber, Cork, Linoleum and Plastic Workers of America v. Great American Industries, Inc.*, 479 F.Supp. 216 (S.D.N.Y. 1979), a letter admitting liability for vacation pay and successfully requesting the union to withdraw its arbitration grievance and a bargaining agreement in which the subsidiary corporation stated its legal obligations to make up past-due supplemental unemployment benefits were each sufficient to revive the claim pursuant to § 17–101. *Id.* at 267. Finally, in *New York State Higher Educ. Services Corp. v. O'Donnell*, 119 Misc.2d 1001, 466 N.Y.S.2d 876 (N.Y.Civ.Ct.1983), a letter "which indicated a clear intention and willingness to make payments 'until such time as my account with [New York State Higher Edu-

cation Services Corporation] shall be settled' " was held to constitute a written promise to pay sufficient to activate Gen. Oblig. § 17–101's tolling provision. 466 N.Y.S.2d at 877.[13]

Mr. Crawford's deposition statements amount to nothing more than a "hint, reference or discussion of the old debt." *In re Gilman*, 57 F.2d 294, 296 (S.D.N.Y.1932). To qualify under § 17–101, the acknowledgment must be one that "leaves no room for doubt." *See id.; see also Goldrick v. Goldrick*, 99 Misc.2d 749; 417 N.Y.S.2d 410 (N.Y.Sup.Ct.1979). Mr. Crawford's remarks fail to satisfy this standard and, as such, cannot toll the four year limitations periods.[14]

Plaintiff admits that the first two counts in its complaint are based on a sale of goods contract and therefore subject to the U.C.C.'s four year limitations period. However, this court disagrees with plaintiff's contention that its last three claims are grounded in fraud and therefore sub-

---

**13.** *See also Schmidt v. Polish People's Republic*, 579 F.Supp. 23 (S.D.N.Y.) *aff'd*, 742 F.2d 67 (2d Cir.1984) (official listing of Treasury Notes as State debts would have satisfied Gen.Oblig.Law § 17.101 standard); *Lorenzo v. Bussin*, 7 N.Y.2d 1039, 200 N.Y.S.2d 923, 167 N.E.2d 73 (1960); (letter in which mortgagor said "as long as I live I will have to pay the debt" construed as promise to pay which effectively tolled statute of limitations for period of debtor's lifetime); *Popular Publications, Inc. v. McCall Corp.*, 36 A.D.2d 927, 321 N.Y.S.2d 308 (N.Y.App.Div.1971) (found sufficient letter from publisher to printer stating that in order to prevent statute of limitations period from running on its indebtedness, it would acknowledge and renew its monetary obligation as "just, correct, due, and unpaid"); *Celia v. Sheh*, 94 Misc.2d 932, 406 N.Y.S.2d 424 (D.Ct.Nassau 1978) (application for revision of determination of sales and use taxes made at time heirs were attempting to clear title to property constituted clear written proof that seller was aware of obligations and was not inconsistent with intention to pay). *Compare* these cases and the instant matter with *Connecticut Trust & Safe Deposit Co. v. Wead*, 172 N.Y. 497, 65 N.E. 261 (1902) (debtor's letter stating not yet able to pay and no prospect of being able to for long time to come did not constitute acknowledgment so as to bar statute of limitations); *Bernstein v. Kaplan*, 67 A.D.2d 897, 413 N.Y.S.2d 186 (N.Y.App.Div.1979) (debtor's note "Sorry for the trouble" sent to creditor along with check for

about one-third of what debtor owed plaintiff did not constitute acknowledgment because debtor failed to acknowledge existence of larger debt); *Curtiss-Wright Corp. v. Intercontinent Corp.*, 277 A.D. 13, 97 N.Y.S.2d 678 (N.Y.App. Div.1950) (where defendant's letter indicated balance in favor of debtor, there was no acknowledgment that defendant owed anything to plaintiff); *Goldrick v. Goldrick*, 99 Misc.2d 749, 417 N.Y.S.2d 410 (N.Y.Sup.Ct.1979) (mortgage signed by ex-wife naming her as "mortgagor" was nothing more than "hint or inference of plaintiff's claim to the property" and as such did not constitute an acknowledgment under Gen. Oblig.Law § 17–101).

**14.** Because this Court disposes of the applicability of N.Y.Gen.Oblig.Law § 17–101 in the aforesaid manner, there is no need to address other prerequisites to the application of this provision that may have been lacking. For instance, § 17–101 requires the acknowledgment to be made to the creditor himself or "to a stranger with the intention that it shall be communicated to and should influence the creditor." *DeFreest v. Warner*, 95 N.Y. 217, 221 (1885). *See also Celia v. Sheh*, 94 Misc.2d 932, 406 N.Y.S.2d 424, 426 (D.Ct.Nassau 1978); *In re Sonnenthal*, 39 Misc.2d 901, 903, 242 N.Y.S.2d 135, 138 (Surr.Ct. 1963). Whether or not Crawford's statements at a deposition that was taken by Nissho and not by Miwon (although the latter's counsel was present), would satisfy this standard is a question this Court need not reach.

ject to a six year statute of limitations.[15] As noted in *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 457 F.Supp. 765, 770 (E.D. N.Y.), *modified*, 604 F.2d 737 (2d Cir.1979), "in applying statutes of limitation to a complaint in which a claim arising out of one set of facts is based on a number of different theories, New York courts ordinarily look beyond the form of the pleading to the essence or gravamen of the cause of action." As such, the contract period of limitations has been applied to claims of fraud that are simply "restatements" of the contract claims. *See id.* at 770; *see also Brick v. Cohen-Hall-Marx Co.*, 276 N.Y. 259, 11 N.E.2d 902 (1937). This practice is followed in order to preclude claimants from characterizing contract breaches as fraudulent in order to obtain longer limitations period. *Triangle*, 457 F.Supp. at 770.

This Court finds that plaintiff's remaining allegations amount to "fraudulent non-performance of the contract itself." *Globekirk, Ltd. v. E.D. & F Man "Coffee" Ltd.*, 123 Misc.2d 902, 904; 474 N.Y.S.2d 388, 390 (N.Y.S.Ct.1984), Plaintiff in substance contends that Mr. Crawford "fraudently" deprived Miwon of the money to which it was entitled under the sale of goods agreements. Such acts cannot be characterized as "fraud extraneous to the contract." *Brick*, 276 N.Y. at 264, 11 N.E.2d at 904, as would be fraudulent inducement to *enter* into an agreement. *See Triangle*, 604 F.2d 737, 747 (2d Cir.1979). Rather, plaintiff's attack aims at Mr. Crawford's failure to perform his contractual obligations and, as such, should be governed by the U.C.C.'s four year limitations period.[16]

Defendant's motion to dismiss the action pursuant to F.R.Civ.P. 12(b)(6) is therefore granted. Because § 17–101 is inoperative in the instant case and thus all of plaintiff's claims are time-barred,[17] this Court need not address plaintiff's motion for summary judgment or defendants' motion to transfer the case to Pennsylvania.

SO ORDERED.

---

**15.** Plaintiff even alleges that the six year limitations period governing fraud should apply to Miwon's "wrongful conversion"/misappropriation claim, against defendant Crawford. Conversion, however, if this is what plaintiff intends, is governed by a three year limitations period. *See* N.Y.Civil Practice Law § 214; *Lancaster v. Kinder*, 98 A.D.2d 300, 305, 471 N.Y. S.2d 573, 577 (N.Y.App.Div.1984). Thus, plaintiff also would have had to have shown a tolling to support the timeliness of its conversion claim.

**16.** *See also Sherkate Sahami Khass Rapol v. Henry R. John & Son*, 531 F.Supp. 1048, 1061

(S.D.N.Y.), *modified*, 701 F.2d 1049 (2d Cir. 1983); *New York Seven-Up Bottling Co. v. Dow Chemical Co.*, 96 A.D.2d 1051, 466 N.Y.S.2d 478 (N.Y.App.Div.1983).

**17.** Since any legitimate claims against defendants are time-barred, plaintiff's contention that the corporate veil should be pierced to satisfy said claims is also rendered moot. *See generally Giblin v. Murphy*, 97 A.D.2d 668, 670, 469 N.Y.S.2d 211, 214 (3rd Dept.1983); 1 Fletcher Cyclopedia of the Law of Private Corporations § 41.20 (1983 Revised Volume).