ROOKERY INVESTING COMPANY, Plaintiff, *v.* AUDLEY CONSTRUCTION CORP. et al., Defendants.

Supreme Court, Special Term, Queens County, December 21, 1946.

*Lili H. Axinn* for Harper Realty Corporation, defendant.

*Leon E. Borden* for plaintiff.

FROESSEL, J. Motion by the defendant, Harper Realty Corporation, the owner of the equity of redemption, to dismiss, pursuant to subdivision 6 of rule 107 of the Rules of Civil Practice, the complaint in this action to foreclose plaintiff's $6,125 prior participating interest acquired on August 9, 1933, in a certain $10,000 mortgage, upon the ground that the cause of action did not accrue within the time limited by law for the commencement of an action thereon. (Civ. Prac. Act, § 47-a.)

The complaint alleges, among other things, that Audley Construction Corp. executed and delivered, on January 16, 1929, a $10,000 bond and mortgage affecting the property described in the complaint. Thereafter on October 26, 1932, Muttac Real Estate Corporation, the then owner of the property, executed and delivered an agreement extending the said bond and mortgage of $10,000, with 6% interest, to February 1, 1938, when said sum " would be paid in full." It is then alleged that taxes, totaling $2,174.73, were not paid for the years prior to 1939; " that the said taxes were sold and a transfer of tax lien at 12% * * * was issued to the City of New York, the tax lien purchaser and that the said mortgagors and subsequent owners of the premises have further neglected to pay taxes for the years 1939–40 to 1945–46 inclusive."

Although the only breach alleged in the complaint is the nonpayment of the aforesaid taxes, the moving papers assert that no payment of interest or principal on account of the mortgage has been made since August 1, 1935; that under section 47-a of the Civil Practice Act the time to begin this action would have expired September 1, 1944, and that since this action was commenced on August 30, 1946, the complaint must be dismissed under the provisions of said statute.

The plaintiff asserts, in reply, five grounds for denying the defendants' application: (1) That since this is a moratorium-protected mortgage, the Statute of Limitations cannot run against it; (2) that the statute does not bar the action because the moving defendant assumed a fictitious name (Civ. Prac. Act, § 19) and could not be found, and the deed conveying the premises to said defendant was unrecorded; (3) that said defendant's title is defective; (4) that the statute was tolled by an acknowledgment in writing; and (5) that interest on the mortgage was, in fact paid up to 1942.

Upon the argument and submission of this motion, the parties subpœnaed and submitted records and documents of the Superintendent of Insurance, of the Supreme Court, New York County, and the foreclosure search of the Inter-County Title and Mortgage Company; they asked the court to consider all the records submitted, together with the moving and opposing papers, in connection with this application, and stated that a trial of the action could produce no additional facts. The solution of the ultimate issue of the applicability of the Statute of Limitations under the circumstances here presented is best approached by the consideration of plaintiff's objections hereinabove enumerated.

1. There is no merit to plaintiff's first objection. When section 1077-a of the Civil Practice Act first became effective on August 26, 1933 (L. 1933, ch. 793), it affected the mortgage in question, in which plaintiff held a $6,125 senior participating interest, but its provisions did not apply in the event of a default authorizing foreclosure other than for the nonpayment of principal or amortization thereof. Thus the right to foreclose for the nonpayment of taxes and interest was undisturbed. The complaint asserts nonpayment of taxes " for the years prior to 1939 " and to the commencement of the action. The title search submitted as an exhibit shows these " prior " taxes to have accrued from a balance in April, 1934, to the first half of 1939–1940, in addition to two assessments, and the grace period in connection therewith to be ten days. By the terms of the extension agreement, the mortgage became due February 1, 1938, subject to the provisions of section 1077-a of the Civil Practice Act. But that statute no longer applied inasmuch as there was a default in the payment of taxes since 1934. The entire principal was due, without recourse to any acceleration clause or any option therein. The mortgagee's rights were precisely the same as they were before the enactment of the moratory statutes. " No factor of option existed, the right to enforce payment of the principal accrued * * * ." (*Kirschner* v. *Cohn*, 270 App. Div. 126, 129; *Egan* v. *Carroll-Garfield Corp.*, 185 Misc. 530, affd. 269 App. Div. 998.) Section 47-a of the Civil Practice Act therefore applies and by its terms (subd. 2) the longer period of limitation theretofore existing was shortened to six years on September 1, 1938. This action, having been begun on August 30, 1946, is therefore barred, in any event, since September 1, 1944. Nor does section 1077-f of the Civil Practice Act help plaintiff, as urged by its counsel,

for this section is " applicable only where the action rests on default in principal alone." (*Levy* v. *Jones,* 269 App. Div. 295, 298.)

2. Nor can the second objection by plaintiff be sustained. The fact that the moving defendant failed to record its deed in no wise prevented plaintiff from commencing its action to foreclose within the period of time permitted by law. It does not seek, nor can it procure, any deficiency or personal judgment against said defendant. Under our recording acts, plaintiff could have commenced its foreclosure action in due time naming as defendants all persons or corporations known to it, by the record or otherwise, to have any claim to this property. Its *lis pendens* and subsequent judgment would have completely cut off the moving defendant, who alone took the risk incidental to its failure to record its deed. Moreover, the slightest diligence on the part of plaintiff would have disclosed the interest of the moving defendant. An inquiry of the Superintendent of Insurance could readily have been made. The fact that the Community Realty Co. collected some rents does not amount to defendant's assumption of a fictitious name pursuant to section 19 of the Civil Practice Act. It is a common practice for owners to employ agents for this purpose. Plaintiff could readily have discovered the close relationship between said company and the moving defendant were it at all interested. Section 19 of the Civil Practice Act cannot aid the plaintiff in this case.

3. The fact that defendant's title to the premises under foreclosure may be defective is of no avail to plaintiff. If said defendant has no interest in the property, plaintiff may discontinue against it. If it has any interest whatever, and plaintiff claims it has in paragraph tenth of the complaint, and by this very action seeks to bar that interest, the moving defendant has the right to defend it by challenging the plaintiff's right to proceed.

4. Plaintiff's fourth objection is that the statute has been tolled by an acknowledgment in writing. Three writings are referred to: (a) An affidavit by the Superintendent of Insurance in the New York County Supreme Court application, (b) the contract of sale between said superintendent and the Reliable Realty Corporation, following the granting of said application and (c) " letters " received by the plaintiff from said superintendent.

(a) The affidavit referred to is in the form of a petition dated January 29, 1942, seeking permission to sell the premises involved herein, as well as others. As to the premises in suit,

the petition states that they are encumbered by a first mortgage (describing it), and continues: " A senior and prior participation in the said mortgage, to the extent of * * * $6125 * * * is held by Rookery Investing Company ", adding that petitioner is the owner and holder of the junior participation therein. It also shows arrears of interest due on the senior participation from August 1, 1935, and tax arrears from the first half of 1934, a total of upwards of $5,000 to 1942, without computation of interest; it appraises the value of the property at $4,500. This writing contains no promise to pay; on the contrary, it manifests an intention to sell the premises without paying the mortgage; it is not addressed to the plaintiff; and it is not an acknowledgment of indebtedness due *from the superintendent* to the plaintiff; it merely recites what was the fact at the time, namely, the existence of plaintiff's lien. In my opinion, this writing did not extend the period within which the plaintiff's claim was capable of enforcement. (*Connecticut Trust & Safe Deposit Co.* v. *Wead,* 172 N. Y. 497; *Bloodgood* v. *Bruen,* 8 N. Y. 362; *Wakeman* v. *Sherman,* 9 N. Y. 85; Civ. Prac. Act, § 59.)

(b) For the same reasons, a like conclusion must be reached with respect to the contract of sale and closing instruments between the superintendent and the Reliable Realty Corporation and its assignee, which contract is dated December 4, 1941, and which merely recited the lien of the plaintiff's mortgage.

(c) While the opposing affidavit refers to " letters " received by the plaintiff from the superintendent and " attached " thereto, no such letter was attached, but plaintiff has submitted one letter to the court, dated January 26, 1942. It is addressed to the plaintiff, and reads as follows: " On various occasions the Superintendent of Insurance of the State of New York, as Liquidator of Greater New York-Suffolk Title and Guarantee Company, has offered to convey to you, for a nominal consideration, each of the parcels of property above captioned, each of which is affected by a mortgage in which you own the senior participating interest.

" However, at no time have you seen fit to submit such an offer or offers and by reason of that fact, this is to advise you that an offer for the purchase of these parcels has now been received in connection with which a contract has been entered into, subject to the approval of the Supreme Court, State of New York, County of New York, and an application has been prepared for submission to the Court, for an order approving

this sale, which application will be submitted within the next two or three days.''

Again there is no promise to pay. It correctly states that the property '' is *affected* by a mortgage in which you own the senior participating interest.'' (Italics mine.) It is clearly insufficient under the statute and the authorities, and the same situation applies to the letter of February 13, 1942, from Community Realty Co., attached to the opposing affidavit. (*Levin* v. *Noble,* 269 App. Div. 808; *National Shawmut Bank of Boston* v. *Sherbrooke,* 36 N. Y. S. 2d 594.) It is a mere offer to sell the superintendent's interest in the premises; it is not a promise to pay anything; on the contrary, it manifests an intention not to pay the mortgage. Here, as well as throughout the years of default, plaintiff showed no interest whatsoever. It slept upon its rights, and permitted the statute to run, apparently because of the fact that it felt the property was not worth protecting, in view of the large accumulation of taxes and other arrears.

5. The remaining objection interposed by plaintiff is that interest on the mortgage was in fact paid up to 1942. At the outset, it has been noted that the only breach alleged in the complaint is the failure to pay taxes. However, there is nothing before me to show that interest was paid as plaintiff claims. It concedes in the moving affidavit that no money was remitted to it, but claims that the superintendent collected an excess of rents over disbursements, and such excess should be deemed as interest applicable to plaintiff's mortgage. There is no legal basis for this contention. Plaintiff acquired its senior participation interest on August 9, 1933, the Greater New York Suffolk Title and Guarantee Company retaining the junior interest. The result was as though plaintiff held a first mortgage, and the said title company the second mortgage. On November 8, 1935, the said title company in rehabilitation acquired title to said property. This may spell out a merger of its junior participation interest in the fee title, but in no wise could that result flow with respect to the senior participation interest; it was not guaranteed. As a matter of fact, when the superintendent, as successor in interest to said title company, conveyed the premises to the moving defendant in 1942, this junior participation interest was satisfied, thus in effect confirming the merger of those interests. During this period, therefore, the superintendent and its predecessor, the title company, were virtually in the position of a second mortgagee who took a deed from the owner and collected the rents to protect his own interests. The superintendent never

received. a sufficient excess to pay his own mortgage, and the plaintiff stood idly by, notwithstanding its prior rights. On no theory can it legally claim that these rents be deemed applicable to its mortgage as interest payments. They were never so applied, nor was there manifest any such intention. On the contrary, in the superintendent's petition to sell this property, he expressly stated that interest had not been paid since August 1, 1935.

In the light of the foregoing views, the motion of the defendant, Harper Realty Corporation, must be granted.

Settle order on notice.