In the Matter of the Accounting of ELLA MULLER et al., as Executors of MAURICE MULLER, Deceased.

Surrogate's Court, Bronx County, March 9, 1948.

*Edward J. Devlin, Giddings Howd, Florence Rogatz* and *Joseph R. Kindstrand* for Ella Muller, executrix.

*Samuel H. Sternberg,* in person, for Samuel H. Sternberg and another, executors.

*Samuel I. Bazil* and *Charles H. Cohen* for Manufacturers Trust Company and another, claimants.

*John Kadel,* special guardian for infants.

HENDERSON, S.   Objections to the account of the executors have been filed by Jacob Fischl and the Manufacturers Trust Company because it contains a rejection of their claim against the estate for the sum of $15,000 and interest from February 1, 1943.

On or about July 9, 1917, the Winnie Realty and Construction Company (hereinafter called "Winnie") executed and delivered a bond and mortgage to Jacob Fischl and Ignatius Fischl, covenanting to pay them the sum of $15,000 with interest at 6% per annum on July 18, 1918.   Simultaneously, and in order to induce the said Jacob Fischl and Ignatius Fischl to surrender to Winnie its promissory note in the sum of $15,000 and to accept in place thereof Winnie's bond and mortgage, the decedent and one Jacob Leitner executed and delivered their collateral bond dated July 9, 1917, guaranteeing the payment of such bond and mortgage.

This mortgage was subordinate to a prior first mortgage in the sum of $80,000.

In 1933, Jacob Leitner died insolvent.   In 1945, Winnie was dissolved pursuant to law, insolvent.   In 1946, the first mortgagee foreclosed its mortgage upon the property covered by the said first mortgage and by the above mortgage executed on July 9, 1917.   Such property was worth less than the first mortgage.

The decedent herein died on the 4th day of September, 1929.

By virtue of assignments, the claimants became the holders of the bond and mortgage executed by Winnie and each has an undivided one-half interest in the bond of the decedent and Jacob Leitner.

The principal sum of $15,000 which became due on July 1, 1918, has not been paid and the interest due since February 1, 1943, remains unpaid.

Proof of claim was filed with the executors on March 28, 1947.

The executors contend that the claim is barred by the Statute of Limitations.

The bonds of Winnie and of the decedent and Jacob Leitner were under seal.   Except for the moratorium laws which the

claimants urge are applicable to the present situation, the Statute of Limitations would have run against the present claim on January 1, 1940 (Civ. Prac. Act, former § 47, and § 21). It is undisputed that on August 26, 1933 (L. 1933, ch. 793), the effective date of the moratorium laws, fifteen years, one month and twenty-six days of the statute had expired, leaving six years, four months and five days to run.

The executors contend that the moratorium laws are not applicable because section 1077-b of the Civil Practice Act, which is part of the moratorium laws, offers its protection only in cases where the indebtedness which a mortgage secures originates or was originally contracted for simultaneously with the mortgage and is secured solely by such mortgage. In this case, they argue, Winnie's indebtedness as evidenced by the surrendered note, was created long before the bond and mortgage and therefore was not originally contracted for simultaneously with the mortgage. Furthermore, they maintain, the mortgage was not the sole security for the indebtedness since the collateral bond executed by the decedent and Leitner contained the provision that it was " further and additional security for the payment of the said bond and mortgage." In any event, even if the moratorium laws are applicable, the executors contend that the claim is barred by the Statute of Limitations by reason of the many defaults of Winnie in the payment of interest and taxes during which times the claimants could have sued on the Winnie bond and mortgage or on the collateral bond.

The indebtedness to the claimants is one recognized as having been contracted for simultaneously with the execution of the bond, mortgage and collateral bond within the meaning of section 1077-b of the Civil Practice Act (*Westchester Trust Co. v. Fox*, 243 App. Div. 582). Furthermore, the existence of a collateral bond guaranteeing payment does not alter the fact that the original bond is secured solely by the mortgage pursuant to the statute (*City Bank Farmers Trust Co. v. Ardlea Corp.*, 267 N. Y. 224; *Klinke v. Samuels*, 264 N. Y. 144; *Haebler v. Heintz*, 271 App. Div. 261; *Westchester Trust Co. v. Fox, supra*). The mortgage moratorium laws must, therefore, be applied to the present claim.

After the effective date of these laws, so long as Winnie was not in default except for the nonpayment of principal, the mortgagees were prohibited from bringing an action to foreclose (Civ. Prac. Act, § 1077-a), no action could be brought on the collateral bond (Civ. Prac. Act, § 1077-b) and the Statute of Limitations would be suspended (Civ. Prac. Act, § 24).

The dates and amounts of interest which became due on the bond and mortgage commencing August 26, 1933, the effective date of the moratorium laws, to February 26, 1942, the last date when interest was completely paid, and the dates of such payments are set forth in a schedule marked " Exhibit ' E ' ". The taxes due on the premises from January 1, 1939, to and including June 30, 1941, the dates and payments thereof are set forth in a schedule marked " Exhibit ' F ' ".

An examination of these exhibits discloses periodic defaults in the payments of interest and taxes by Winnie.

It is undisputed that while such defaults in the payments of interest were outstanding, the moratorium laws did not bar the mortgagees from foreclosing the mortgage and actions on the collateral bond could have been maintained.

Due to the varied times when interest payments were made to the Manufacturers Trust Company and to Jacob Fischl, the claimants assert that the Manufacturers Trust Company could have made timely service of its proof of claim at any time up to and including January 5, 1948, and that Jacob Fischl could have made timely service of his proof of claim at any time up to and including September 15, 1947.

In arriving at these conclusions, the claimants, in computing the number of days in connection with the defaults of interest, have taken credit for certain thirty-day periods which they call grace periods, on the authority of section 1077-a of the Civil Practice Act. In connection with the defaults in the payment of taxes, they have eliminated any period of default on the theory that under the provisions of the bond there was no default until the expiration of thirty days after notice and demand, and in this case no notice and demand was ever given.

The Winnie bond provides that the whole of the principal shall become due at the option of the obligee after default in the payment of interest for thirty days or after default in the payment of any tax for thirty days after notice and demand. These provisions deal only with the right of accelerating the due date of the principal of the Winnie mortgage. In this case, however, no necessity for accelerating the principal existed. Here the principal was already due and action could have been commenced on the Winnie bond or to foreclose the mortgage on July 1, 1918. The reference in section 1077-a of the Civil Practice Act to grace periods concerns only those cases in which it was necessary to wait for the expiration of a grace period as a condition precedent to the acceleration of the principal. Upon any default in the payment of taxes and interest during

the moratorium laws, suit could have been commenced (*Kirsch-ner* v. *Cohn*, 270 App. Div. 126; *Rookery Investing Co.* v. *Audley Constr. Corp.*, 188 Misc. 693).

An examination of the exhibits discloses that the Winnie bond and mortgage was in default in the payment of interest on August 1, 1942, and continuously thereafter. At that time as on August 26, 1933, the effective date of the moratorium laws, the Statute of Limitations unadjusted had six years, four months and five days to run. However, by section 47-a of the Civil Practice Act, this time was later cut down to six years, and the time within which the claimants could bring action would have expired on August 1, 1948.

Between August 1, 1936, and August 25, 1938, with respect to the claim of the Manufacturers Trust Company, interest was in default for a total of 114 days. In view of section 47-a of the Civil Practice Act, these days may be ignored since their only effect is to cut down the period of six years, four months and five days to six years and eleven days and the effect of section 47-a is again to reduce this period to an even six years.

Between February 1, 1939, and February 26, 1942, the aggregate of the periods of default in the payment of interest to the Manufacturers Trust Company is 411 days or one year, one month and sixteen days. By subtracting this latter period from August 1, 1948, the resulting figure is June 15, 1947, and the Statute of Limitations would not expire until that date if interest on this claim were the only factor to be considered. However, defaults in taxes aggregated 665 days over this period of which there were 135 days upon which there was a concurrent default in the payment of interest. By eliminating these days of concurrent default, there is left the net amount of 530 days during which taxes were in default. By deducting this period of time from June 15, 1947, the result is the date January 1, 1946, when the Statute of Limitations expired as to the claim of the Manufacturers Trust Company. As it filed its claim on March 28, 1947, it was filed too late.

With respect to the claim of Jacob Fischl, the duration of the defaults in the payments of interest from August 1, 1936, to September 1, 1938, was 284 days. Deducting this period from six years, four months and five days, the period during which the Statute of Limitations had yet to run on August 25, 1938, reduces such time to five years, six months and twenty-one days. This period remained unaffected by section 47-a of the Civil Practice Act so that on August 1, 1942, when Winnie was in

default in the payment of interest and continuously thereafter, the statute had still five years, six months and twenty-one days to run. Adding this period to August 1, 1942, the statute would expire on February 22, 1948.

Between February 1, 1939, and February 26, 1942, the aggregate of the periods of default in the payment of interest is 528 days. Deducting this period from February 22, 1948, the statute would expire on September 9, 1946. Deducting from this date 499 days, the aggregate number of the days of defaults in taxes during which there were no concurrent defaults in the payment of interest, the result is April 25, 1945, when the statute expired as to the claim of Jacob Fischl. As he filed his claim on March 28, 1947, it was filed too late.

The entire claim of the objectants for the principal amount of the collateral bond herein is, therefore, barred by the Statute of Limitations.

The claimants, however, are entitled to interest on the principal amount of their claim at the rate fixed in the stipulation of the parties for a period of six years before the filing of the claim to the termination of the limitation period as to principal, or between February 1, 1943, to January 1, 1946, as to the Manufacturers Trust Company and between February 1, 1943, to April 25, 1945, as to Jacob Fischl (*Jackson Heights Apt. Corp.* v. *Staats,* 272 App. Div. 780; *Ernst* v. *Schaack,* 271 App. Div. 1012; *Kirschner* v. *Cohn,* 270 App. Div. 126, *supra*).

The compensation of the attorney-executor is fixed at the amount requested payable out of the corpus of the estate.

Settle decree.