JANE BRODER, Respondent, v ALVIN BRODER, Appellant.

First Department, January 27, 1983

**APPEARANCES OF COUNSEL**

*Robert Z. Dobrish* of counsel (*Robert A. Goldschlag* with him on the brief; *Hoffinger, Friedland & Roth,* attorneys), for respondent.

*Leonard C. Shalleck* of counsel (*Erdheim, Shalleck & Frank,* attorneys), for appellant.

**OPINION OF THE COURT**

KASSAL, J.

The issue presented is whether a matrimonial action commenced prior to July 19, 1980 is still alive on that date for purposes of determining the plaintiff's entitlement to seek equitable distribution relief in a subsequent divorce action.

On May 22, 1979, plaintiff, by her attorney, served a summons, with a notice, upon the defendant. On May 31, 1979, defendant's attorney served a notice of appearance and a demand for a complaint. The parties ceased living together in September, 1979, when the husband departed

from the marital abode after they had had several discussions pertaining to their relationship. No complaint or any other pleadings or other papers were ever served by the parties or their respective attorneys.

Thereafter, there were several negotiations by the parties with regard to a possible separation agreement. These discussions took place for some time but were terminated in the latter part of 1979.

For almost one year, there was no activity with regard to this matter until on October 8, 1980, when a letter was sent to plaintiff from the attorney for the defendant in which she was asked to communicate with her previous attorney with whom she had not been in contact. That letter requested that she have her counsel contact the husband's attorney at the earliest convenience. After receiving this letter, the plaintiff advised the attorney for her husband that she was not then represented, whereupon, by letter delivered November 10, 1980, the husband's attorney advised her to retain another attorney. The wife obtained a new attorney, her present counsel, in the early part of 1981, who proceeded to serve a new summons upon the attorney for the husband in accordance with their understanding that counsel would accept such service as if it were personally effected upon the defendant. The husband's attorney thereupon served another notice of appearance, dated June 5, 1981, and after service of the motion to dismiss, on June 26, 1981, a notice of discontinuance of the prior action was served "to close the door to any possibility that it is required, not because we deem it to be necessary under the circumstances."

The motion, returnable July 2, 1981, sought dismissal of the portion of the second summons which contained a prayer for "equitable distribution". Special Term denied the motion, holding that the initial action appeared to have been abandoned, concluding that the "notice of discontinuance formally inters the first action, which never went beyond the service of a summons".

The issue presented on this appeal is whether the pertinent Court of Appeals cases, namely *Valladares v Valladares* (55 NY2d 388) and *Tucker v Tucker* (55 NY2d 378)

operate so as to render valid the second summons for purposes of the commencement of a new divorce action after July 19, 1980, so as to entitle the parties to the benefits of the equitable distribution statute (Domestic Relations Law, § 236, part B).

In both *Valladares* and *Tucker* (*supra*), actions for divorce had been commenced prior to July 19, 1980, the effective date of the equitable distribution statute. In *Valladares,* the defendant wife, who had counterclaimed for divorce prior to equitable distribution, sought leave after July 19, 1980 to seek equitable distribution. In *Tucker,* the wife commenced a divorce action prior to July 19, 1980 and, thereafter, sought leave to discontinue it for the express purpose of obtaining equitable distribution relief. Permission to do so was denied. As was observed by Judge JONES in the *Tucker* case, there may not be a discontinuance of the earlier action for the purpose of instituting a second action after the date of the statute to thereby obtain the benefits of equitable distribution.

The purpose or motivation behind any prior discontinuance is the crux of the issue in this case. As stated, the only papers served to commence the initial action in May, 1979 was a summons, in response to which a notice of appearance was served, also in May, 1979. Nothing transpired thereafter in the original action except that the parties proceeded to resolve their personal matters to the extent that the husband vacated the marital home, presumably provided support for his family and, apparently, for all purposes, both parties treated the summons, notice of appearance and, indeed, the entire legal proceeding as having been abandoned.

This is not an unfamiliar pattern in matrimonial litigation where the service of a summons with or without a complaint is hurriedly effected to accomplish an immediate or limited result, whether the objective be to have a spouse vacate the marital home, provide support, negotiate or take another close look at the stance of the legal situation from a different perspective. The service of a summons more than one year before equitable distribution cannot be interpreted in every instance to be the commencement of action with the conclusion that the party doing so must

forever automatically be precluded from commencing a new action for that purpose. The circumstances must be carefully examined.

In *Tucker*, as noted by Judge JONES (55 NY2d, at p 384), the "plaintiff sought to abandon her action instituted in December, 1978; with commendable candor she stated in her supporting affidavit that she sought discontinuance of her pending action in order that she might commence a new action" to obtain the benefit of the Equitable Distribution Law.

The underlying motive of the party seeking to discontinue or amend an existing divorce action is critical. In our case, the parties themselves clearly treated the action as abandoned. Nothing was done by either party. Plaintiff's original attorney, who had represented her only for the purpose of serving the summons, was no longer representing her. The parties did, in fact, separate and did, apparently, have an informal understanding. Furthermore, defense counsel recognized this by (1) corresponding directly with her by letter of October 8, 1980 (which would have been improper if an ongoing action was pending); (2) suggesting to plaintiff on November 10, 1980 that she "retain an attorney"; (3) failing to mention any pending proceeding in either of the two letters to her, in October and November, 1980; and (4) referring in both of these letters to the parties herein at the customary location at the top of the letters alongside the "Re:" as "In the Matter of Jane and Alvin Broder" and not as "Broder v. Broder".

Lastly, to make doubly certain that the action had been formally discontinued, on June 26, 1981, plaintiff's present attorney served a notice of discontinuance pursuant to CPLR 3217. Moreover, when the new summons was served in early June, 1981, it was not rejected, whereupon defendant's attorneys served a new notice of appearance.

In *Dunn v Dunn* (86 AD2d 772, 774) the Appellate Division, Fourth Department, based upon the fact that neither party had treated a 1976 divorce action as viable for nearly three and one-half years after its commencement, granted defendant wife's motion to dismiss the prior action as "otherwise abandoned by the parties."

The recent Court of Appeals decision in *Pollack v Pollack* (56 NY2d 968) is not at variance with this conclusion. In the *Pollack* case, there was a viable, existing action which the plaintiff wife sought to discontinue in order to commence a new action under equitable distribution. The court (p 969) found such a "voluntary discontinuance in order to avoid the legislative mandate" improper and in direct contravention of the clear legislative purpose, as expressed in part B of section 236 of the Domestic Relations Law. What distinguishes *Pollack,* however, is that, here, at the time the second action was instituted, the parties did not treat the prior proceeding as a viable action which they intended to further pursue.

It is virtually impossible to state as a general proposition and as a matter of law that *all* prior matrimonial actions, whenever commenced and without regard to whatever action may have been taken, preclude a subsequent application for equitable distribution treatment under part B of section 236 of the Domestic Relations Law. Each case must be resolved on the basis of the facts and circumstances presented. Would we preclude equitable distribution treatment had the first action been commenced several years prior to the request for relief under equitable distribution? At what point in time would an appropriate cutoff be fixed? Obviously, all factors evidencing the continuing viability or abandonment of the previous legal action must be explored. So too here.

The conclusion appears inescapable that the 1979 action was abandoned and, therefore, Special Term properly denied defendant's motion to dismiss so much of the second summons and complaint as sought equitable distribution.

Accordingly, the order, Supreme Court, New York County (SHAINSWIT, J.), entered September 17, 1981, which denied defendant's motion to dismiss so much of the complaint as sought equitable distribution, should be affirmed, without costs and without disbursements.

BLOOM, J. (dissenting). This case presents us with still another phase of the ongoing efforts to transform divorce actions begun before the effective date of the equitable distribution statute into one to which the equitable distribution statute is applicable.

On May 22, 1979, plaintiff, while still living with defendant, served upon him a summons with notice in an action for divorce. Somewhat more than a week later the defendant husband served a notice of appearance and demand for a complaint. In September, after the parties had discussed between themselves the future status of their relations, the husband left the matrimonial domicile. Thereafter the parties, through their counsel, negotiated on the terms of a separation agreement to be embodied in their divorce. These negotiations consumed the balance of 1979 and bore no fruit.

Thereafter plaintiff and her attorney terminated their relations. Accordingly, the negotiations lapsed. Sometime in October, 1980 the husband's attorney contacted plaintiff, presumptively for the purpose of bringing the negotiations back to life. He then ascertained that plaintiff was no longer represented by counsel. The following month he advised her, by letter, to retain another attorney. She did so and her new attorney served a new summons upon defendant. However, since the second summons was served *after* the equitable distribution statute became effective, the notice containing the items of relief sought included a demand for equitable distribution.

The husband once again served a notice of appearance with a demand for a complaint. Some three weeks after service of the notice of appearance plaintiff's counsel sent a stipulation to defendant's counsel, discontinuing the first action. The purported purpose was to preclude a motion to dismiss the complaint upon the ground that there is another action pending between the same parties for the same cause. Defendant responded with a motion to dismiss so much of the relief claimed in the notice contained on the second summons as demanded equitable distribution. Special Term denied the motion holding that the first action had been abandoned and that service by plaintiff's current attorney of the "notice of discontinuance" was no more than a formal interment of the first action.

I am aware of the differences in procedural posture between this case and cases such as *Valladares v Valladares* (55 NY2d 388), *Tucker v Tucker* (55 NY2d 378), *Pollack v Pollack* (56 NY2d 968), and *Zuckerman v Zucker-*

*man* (56 NY2d 636). Notwithstanding these differences, the thrust of all of these cases is that a divorce action begun prior to the effective date of part B of section 236 of the Domestic Relations Law may not be forsaken so that a new action may be instituted after the effective date of the equitable distribution statute in order that its greater financial benefits may be reaped.

Here, there was never any formal termination of the first action prior to the commencement of the second. Plaintiff did not seek to discontinue it nor did defendant move for its dismissal. It merely lay fallow. Plaintiff recognized this by seeking a stipulation of discontinuance *after* the second action had been commenced. In these circumstances, I am of the opinion that Special Term erroneously concluded that the "notice" of discontinuance was no more than the last rites for the first action. Hence, I would reverse and grant the motion.

MURPHY, P. J., ROSS and LYNCH, JJ., concur with KASSAL, J.; BLOOM, J., dissents in an opinion.

Order, Supreme Court, New York County, entered on September 17, 1981, affirmed, without costs and without disbursements.