MIA LANCASTER, Respondent, v TYRONE KINDOR, Appellant.

First Department, January 10, 1984

APPEARANCES OF COUNSEL

*Martin S. Rothman* of counsel (*Matthew A. Tedone* and *Alyne Diamond* with him on the brief; *Tedone & Tedone,* attorneys), for appellant.

*Maria Lancaster,* also known as *Mia Lancaster,* respondent *pro se.*

### OPINION OF THE COURT

*Per Curiam.*

Defendant appeals from a judgment after jury trial awarding plaintiff $1,053,422.50 in damages and interest. The complaint spells out causes of action for breach of contract, conversion and malicious prosecution. Defendant also appeals from interim orders permitting service by publication, permitting foreign service by mail, granting dismissal only conditionally, granting poor person relief while denying reargument and renewal of the prior motion to the extent that it had granted defendant relief only conditionally, granting plaintiff a special trial preference, denying dismissal of the complaint, denying a motion to set aside the jury verdict, and denying still another motion to dismiss or set aside the verdict and grant a new trial on the ground of newly discovered evidence.

Plaintiff, who was represented by three different attorneys at various stages of this litigation, tried the case and now responds on this appeal *pro se.* She is no stranger to the courtroom, having appeared *pro se* in the Civil and Criminal Courts of the City of New York as well as the Supreme Court. Some confusion was generated during trial because of plaintiff's simultaneous role as litigant, counsel, and witness. Liberties not otherwise due a litigant were permitted to be taken which may very well have influenced the sizeable verdict.

Plaintiff came to New York City from the midwest as a teen-ager, seeking an education at Hunter College and a career in modeling. She and defendant became lovers in 1973. Following travels on her own to Colombia and France, plaintiff returned to New York City and moved in with defendant at his apartment during the fall of 1973. After a few months defendant apparently lost interest and sought to sever the relationship. However, plaintiff followed defendant to Florida, where he had relocated presumably for business purposes. Plaintiff persisted in pursuing defendant in vain attempts to be taken back.

Toward the end of 1973 plaintiff allegedly advanced defendant somewhere between $3,000 and $11,000 for investment on her behalf in Florida. Plaintiff never received a return on this investment, which she claims to have expected by March, 1974. The jury, accepting the higher figure, awarded plaintiff $11,000 on her cause of action for breach of contract.

The cause of action sounding in conversion stems from defendant's alleged refusal to return certain personal property held by defendant in Florida. According to defendant, plaintiff made about half a dozen trips to his apartment in Miami between Christmas, 1973 and September, 1974, in the futile hope that the relationship could be rekindled. Defendant permitted plaintiff to store some of her belongings in his apartment while she looked for quarters of her own in Florida. The jury awarded $10,000 in damages for failure to return this property.

The third cause of action, for which the jury awarded $1,000,000 in damages, was for malicious prosecution stemming from a criminal complaint that plaintiff had assaulted defendant on a Manhattan street corner in June, 1975. On that day plaintiff allegedly accosted defendant on the street, followed and hurled insults at him, and finally punched him in the eye. He sought medical treatment for his injury. At the trial of this case, the court excluded the hospital records from evidence. This was reversible error inasmuch as plaintiff had made an issue of whether the assault had taken place at all, asserting that defendant had been in Florida on that particular date. The hospital records, together with photographs of the facial injury,

were highly relevant on this issue (see *Cherico v City of New York,* 88 AD2d 889).

Following the advice of counsel, defendant filed a criminal complaint against plaintiff for assault. Persisting in her denial that the assault ever took place, plaintiff insisted that defendant had been in Florida on the date in question, and had telephoned the complaint in through a contact of his at the New York County District Attorney's office. Plaintiff was arrested on June 26, 1975, eight days after the alleged assault, and was taken to the precinct where criminal charges were preferred against her. She alleged that the trauma of this experience caused her to lose her job and suffer from physical and emotional stress, thus jeopardizing her promising modeling career.

The conversion cause of action should have been dismissed, if not for lack of personal jurisdiction, then by reason of the Statute of Limitations. Plaintiff instituted suit by service of a bare summons in February, 1976. Defendant noticed his appearance on March 9 of that year, with a demand for a complaint. No complaint was ever served within the required 20 days (CPLR 3012, subd [b]), nor for that matter at any time over the next four years. The time for serving a complaint was extended by stipulation to June 30, 1976, but it was not until March, 1980 that plaintiff served a complaint accompanying a new summons. In the interim, defendant had never moved to dismiss the action for failure to comply with his demand.

The only complaint ever purportedly served was that which accompanied the new summons in 1980. Plaintiff thereby instituted a new action against defendant, and the earlier action wherein plaintiff had ignored a demand for a complaint should have been dismissed (*Sutton v Winston,* 93 AD2d 884).

Even assuming that the complaint accompanying the new summons in 1980 purported to be a continuation of the original action in which a complaint had not yet been served, a delay of nearly four years in serving a complaint amounts to abandonment of the action, especially in the absence of a valid excuse. CPLR 3215 (subd [c]) provides that where a plaintiff fails within one year to move for default on an unanswered complaint, that complaint

should be dismissed as abandoned. A fortiori, plaintiff's neglect to serve a complaint here for nearly four years should be deemed no less an abandonment of the earlier action.

The attempt to shift the blame for such unconscionable delay onto the shoulders of plaintiff's former attorney is not an acceptable excuse (*Sortino v Fisher,* 20 AD2d 25, 29). The service of a stale complaint years after a demand for same, without a demonstration of excusable delay and a meritorious cause and without court order authorizing such belated service, cannot defeat defendant's right to a dismissal for tardy service of a promptly rejected complaint (*Dobbins v County of Erie,* 65 AD2d 934). There was an abandonment of the first action (see *Broder v Broder,* 91 AD2d 302, affd 59 NY2d 858; *Dunn v Dunn,* 86 AD2d 772, app dsmd 56 NY2d 591). The 1976 summons sought $256,000, while the new action sought over $1,000,000. Moreover, the 1980 complaint charged malicious prosecution, which could not have been encompassed in the February, 1976 summons. The criminal prosecution was not terminated until May, 1976. A cause of action for malicious prosecution accrues only when the criminal action is terminated (*Dailey v Smiley,* 65 AD2d 915).

In connection with the new summons filed with the complaint in 1980, plaintiff obtained an order permitting service by publication. Eleven days later plaintiff obtained a subsequent order permitting service by registered mail to the home of defendant's parents in Arizona. It was this set of papers that was rejected by defendant's attorney on the assumption that they were a belated attempt to revive a long since abandoned action. Plaintiff moved on March 18, 1980 for default judgment, by show cause order initially returnable March 25. Defendant cross-moved for dismissal of the complaint.

It is not clear whether plaintiff complied even with the terms of this rather unique manner of service. The order required service of the summons and complaint, together with the order, by registered mail, return receipt requested. The record contains a registered mail return receipt, indicating that the letter, with the sender described as "WRKS (Contest Dept.)", was mailed from New

York on February 19, 1980, but was returned from Scottsdale, Arizona, the address of defendant's parents, marked "unclaimed". The affidavit of service by mail was not dated until April 17 (well after the bringing on of the default motion by show cause order). The affidavit does not indicate if the order authorizing the manner of alternative service was included in the papers, as that order had required.

In addition to service by mail, plaintiff engaged an Arizona process server to deliver the summons and complaint to the home of defendant's parents. The affidavit of the process server indicates that he rang the doorbell at the Scottsdale address of defendant's parents shortly before midnight on a Saturday night, and delivered the summons and complaint to an unidentified individual (not the defendant). Again, there is no indication that the order authorizing foreign service was also served, as required by the order.

Even if the new summons and its accompanying complaint were deemed properly served in commencement of a brand new action, thus avoiding a defense of abandonment in failing to serve a complaint in the original action in a timely fashion, the conversion cause of action would be barred by the three-year Statute of Limitations (CPLR 214). Plaintiff's last genuine attempt to retrieve her personal property was on a trip to Florida in September, 1974. The commencement of an action in 1980, sounding in conversion, is thus time barred.

With regard to the breach of contract cause of action, the complaint states that plaintiff expected from the agreement to receive "the return on her investment in March of 1974." Service by mail pursuant to the order was effected on February 19, 1980, and service by the Arizona process server took place on March 30, which would bring that cause of action within the ambit of the six-year Statute of Limitations (CPLR 213). However, the filing of the proofs of service was tardy.

In addition to the manner of service being unauthorized and defective, defendant asserts that the filing of the Arizona process server's affidavit of service was not effected until April 29, 1980. Further, the affidavit of service

by mail, which does not bear a court clerk's stamp, and was presumably never filed, did not surface until March, 1982, when it was annexed to plaintiff's affidavit in opposition to a motion to dismiss. Thus, reasons defendant, service to commence the action was not completed and personal jurisdiction was not acquired until after expiration of the six-year Statute of Limitations.

Delay in filing proof of service under CPLR 308 is merely a procedural irregularity, not jurisdictional, and may be corrected *nunc pro tunc* by the court (*Haegeland v Massa,* 75 AD2d 864; *Hudela v Posner,* 70 Misc 2d 726). The action is commenced with the delivery of a summons, and cannot thereafter be defeated simply by reason of a belated filing of proof of service (*Lopez v Quickset Printers,* 70 Misc 2d 732), especially in the absence of a statement by defendant categorically denying that he ever received the papers (cf. *Empire Nat. Bank v Judal Constr.,* 61 AD2d 789). The basic requirement is that proof of alternative service, such as under CPLR 308 (subds 2, 4), must be filed within 20 days after such service (*Reporter Co. v Tomicki,* 60 AD2d 947, mot for lv to app dsmd 44 NY2d 791). Alternative service upon a natural person normally is not deemed completed until 10 days after filing of proof of service (see, e.g., CPLR 308 subds 2, 4), which would have carried formal commencement of the action well into May, 1980. But the purpose of requiring filing of proof of service, along with the 10-day grace period, pertains solely to the time within which the defendant must answer, and does not relate to the jurisdiction acquired by service of the summons (*Browning v Nix,* 47 Misc 2d 709; *William Iser, Inc. v Garnett,* 46 Misc 2d 450; 1 Weinstein-Korn-Miller, NY Civ Prac, par 308.16).

Plaintiff never did make a motion for a *nunc pro tunc* filing of the proof of service of the summons and complaint. Instead, plaintiff sought a default judgment by show cause order (a) fully 12 days prior to the date on which the Arizona process server left the papers at defendant's parents' home; (b) in the total absence of filing of any proof of service by registered mail, as required by the authorizing order; and (c) after having apparently served the summons and complaint unaccompanied by a copy of the authorizing

order, in clear violation of the terms of that authorization. However, we shall deem the filing of proof of service to have been timely, *nunc pro tunc,* even absent an application toward that end, in light of plaintiff's proceeding as a *pro se* litigant, who may be granted procedural liberties not generally afforded attorneys representing clients at the Bar.

However, it is plain that plaintiff was commencing a new action by serving the summons and complaint pursuant to court order. The complaint included a cause of action for malicious prosecution which had not accrued at the time of service of the prior summons. Moreover, the application to the court for orders designating the mode of service of a summons and complaint on defendant, by publication and personally, demonstrates an abandonment of the prior action. No service on defendant and new summons would be required if this was not a new action. An order permitting belated service of the complaint on the attorneys would be the sole requirement to continue the prior action.

Plaintiff's contention that this is merely a continuation of the original action is without basis in fact or law.

On the merits of the contract claim, plaintiff annexed to her complaint a rather inartfully drawn, typewritten agreement, undated, purportedly signed by the parties. This document noted that "approximately $11,000.00" had been given by plaintiff to defendant for investment, with returns expected "as of March 1974." A handwriting expert testified at trial that the purported signature of defendant on this document was not in defendant's handwriting, and in fact was in a handwriting that closely resembled that of plaintiff. Indeed, plaintiff's case at trial contained no affirmative references to this purported written agreement. Instead, plaintiff sought to prove an alleged oral agreement whose terms were the same as those contained in the typewritten document. The jury believed this claim and awarded an $11,000 verdict.

There appears to be sufficient evidence in the record to support this finding. We accordingly affirm that portion of the judgment awarding damages for breach of contract, notwithstanding the questionable attempt by plaintiff to

strengthen her case by basing this cause of action initially on a document of highly questionable validity.

■ The cause of action for malicious prosecution should have been dismissed. The one-year Statute of Limitations (CPLR 215) barred this nearly five-year-old claim in 1980. Moreover, the act complained of was clearly not actionable. In order to establish a cause of action for malicious prosecution, plaintiff must demonstrate that defendant initiated criminal prosecution against the plaintiff, that the action terminated in plaintiff's favor, that there was an absence of probable cause for such criminal proceeding, and that defendant was motivated by actual malice (*Broughton v State of New York,* 37 NY2d 451, cert den *sub nom. Schanbarger v Kellogg,* 423 US 929).

The element of malice might be inferred from an absence of probable cause (*Loeb v Teitelbaum,* 77 AD2d 92). However, the facts here belie such a malicious intent. The fact that plaintiff was held by the Criminal Court Judge for trial pursuant to the assault charge establishes prima facie probable cause for that prosecution, such as to bar a subsequent action for malicious prosecution (*Graham v Buffalo Gen. Laundries Corp.,* 261 NY 165).

Moreover, it is questionable whether plaintiff proved termination of the criminal proceeding in her favor, notwithstanding the ultimate finding of not guilty of harassment in May. This was only after plaintiff received two adjournments in contemplation of dismissal (CPL 170.55), vacated because of her alleged harassment of defendant. An adjournment in contemplation of dismissal (ACD) is a nonfinal disposition. It is not a "favorable termination for purposes of a malicious prosecution action" (*Lewis v Counts,* 81 AD2d 857). Since it is made prior to a decision on the merits, an ACD leaves open the question of guilt, thereby precluding an action for malicious prosecution by one who accepts such a disposition (*Fair v City of Rochester,* 84 AD2d 908). The purpose of the statutory ACD procedure was to provide a shield against the criminal stigma that would attach to a defendant accepting such an adjournment; it was not intended to present such a defendant with a sword for recovery of monetary damages as a result of the prosecution (*Triebwasser v State of New York,* 117 Misc 2d

92). While such an adjournment is neither a conviction nor an acquittal, it does interdict an action for malicious prosecution (*Hollender v Trump Vil. Coop.*, 58 NY2d 420).

In 1982 the Criminal Procedure Law was amended to permit a court to condition an ACD on the performance of service for a public or nonprofit corporation, institution or agency (CPL 170.55, subd 5). Concomitant with this imposition of involuntary service, the Legislature re-emphasized in the statute that the granting of an ACD would not be deemed a conviction or admission of guilt, nor would the person availing himself of such procedure "suffer any disability or forfeiture as a result" of such procedure (CPL 170.55, subd 6). Notwithstanding the fact that an ACD ultimately results in nullifying the arrest and prosecution and restores the criminal defendant to the legal status he occupied before the arrest and prosecution (CPL 170.55, subd 6), such a procedure is still "not the same as saying that an ACD is a favorable disposition sufficient to maintain a malicious prosecution action." (*Malanga v Sears, Roebuck & Co.*, 118 Misc 2d 10, 13.) The purpose of the Legislature in enacting the 1982 amendment was not to alter this basic viewpoint (*Nappi v Kappeler*, 118 Misc 2d 638, 639).

Without filing separate notices of appeal, defendant has sought on this appeal from the judgment to bring up also for review six pretrial orders and two posttrial orders. Those orders which may have affected the final judgment have been reviewed herein, in conjunction with the appeal from the judgment. (CPLR 5501, subd [a], par 1; *Champion Int. Corp. v Dependable Inds. Corp.*, 47 AD2d 473, app dsmd 36 NY2d 983; see 10 Carmody-Wait 2d, NY Prac, § 70:15.)

Accordingly, the judgment, entered October 8, 1982 after jury trial before MODUGNO, J., should be modified on the law to the extent of reversing and dismissing the causes of action for conversion and malicious prosecution and the verdict thereon, and otherwise affirmed without costs. The orders reviewed herewith should be similarly modified to conform with our disposition of the judgment on this appeal.

SANDLER, J. P., ROSS, FEIN, LYNCH and KASSAL, JJ., concur.

Judgment, Supreme Court, New York County, entered on October 8, 1982, unanimously modified on the law to the extent of reversing and dismissing the causes of action for conversion and malicious prosecution and the verdict thereon, and otherwise affirmed, without costs and without disbursements. The six pretrial orders and two posttrial orders reviewed herewith are similarly modified to conform with our disposition of the judgment on this appeal.